UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NICOLAI MORK,

    Plaintiff

v.

PERRY RUSSELL, et al.,

    Defendants

Case No.: 3:21-cv-00077-MMD-CSD

**Order**

Re: ECF No. 58

Plaintiff has filed a motion for spoliation sanctions under Federal Rule of Civil Procedure 37(e) against defendant Dr. Naughton. (ECF No. 58.) Dr. Naughton filed a response. (ECF Nos. 62, 62-1.)

**I. BACKGROUND**

Plaintiff was an inmate in the custody of the Nevada Department of Corrections (NDOC) when he filed this pro se civil rights action under 42 U.S.C. § 1983. He was subsequently released from prison on parole.

The court screened his complaint and allowed him to proceed with three claims: (1) an Eighth Amendment deliberate indifference to serious dental care claim against Henderson in Count I; (2) an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Naughton in Count II; and (3) an Eighth Amendment claim of unsafe conditions of confinement related to COVID-19 against Russell in Count III. (ECF No. 7.) He subsequently agreed to dismissal of the claim against Russell.

This motion concerns Plaintiff's claim against Dr. Naughton. In this claim, Plaintiff alleges that he informed Dr. Naughton in September 2019 about a rapidly spreading skin rash,

and by the time he saw Plaintiff a month later, the rash had spread from his arm to much of his upper body. He avers that Dr. Naughton told him it was dermatitis from the laundry, and prescribed Plaintiff oral and topical steroids which failed to improve the rash. Plaintiff asked to see a dermatologist, but Dr. Naughton is alleged to have told him that he would not see a dermatologist while in prison. Plaintiff avers that Dr. Naughton threatened that if he continued to seek medical help, he would move Plaintiff to a high security prison. Plaintiff continued to suffer from the rash and terrible itching.

In this motion, Plaintiff asserts that spoliation sanctions are appropriate because Dr. Naughton willfully deleted a photo that he took of Plaintiff's rash on his personal cellphone.

## II. DISCUSSION

**A. Spoliation Sanctions**

Sanctions are available under Federal Rule of Civil Procedure 37(e) when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" Fed. R. Civ. P. 37(e). There are two categories of sanctions available under Rule 37(e). First, if the court finds another party is prejudiced by the loss of the information, the court "may order measures no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1). Second, if the court finds that the party "acted with the intent to deprive another party of the information's use in litigation," the court may: "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter default judgment." Fed. R. Civ. P. 37(e)(2)(A)-(C).

The Advisory Committee's notes to the 2015 amendment to Rule 37 indicate that with respect to electronically stored information (ESI), such as that at issue here, Rule 37(3) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Courts have applied a preponderance of the evidence standard in determining whether there has been spoliation. *See Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) (citations omitted). Under that standard, it must be shown that it is "more probably true than not true" that the prerequisites for spoliation sanctions are met. Ninth Circuit Model Civil Jury Instruction 1.6 (2017 ed.).

**B. The Duty to Preserve**

Sanctions under Rule 37(e) may be imposed "only if the lost information should have been preserved in anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) advisory committee notes to 2015 Amendment. The Rule is based on the common law duty "to preserve relevant information when litigation is reasonably foreseeable." *Id*. The corollary is also true: "The rule does not apply when information is lost before a duty to preserve arises." *Id*. In determining whether and when a duty to preserve arose, the court "should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id*.

"[A] duty to preserve ESI can arise far in advance of the formal retention of a lawyer or the filing of a lawsuit." *Fast,* 340 F.R.D. at 337. The duty "extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Aramark Mgmt., LLC v. Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *3 (C.D. Cal. Jan. 27, 2021), *adopted in* 2021 WL 863746 (C.D. Cal. Mar. 8, 2021); *Surowiec v.*

*Cap. Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (citation and quotation marks omitted).

The screening order was issued on September 23, 2021. (ECF No. 7.) The parties participated in an early mediation conference on February 1, 2022. (ECF No. 17.) A subsequent mediation session was held on March 15, 2022, because the mediator previously directed defense counsel to obtain additional information and medical records for Plaintiff's review. (*Id.*, ECF No. 18.) A settlement was not reached. (ECF No. 18.) A status report was filed regarding the results of the mediation on behalf of defendants Dr. Naughton and Russell on March 15, 2022. (ECF No. 19.) Service was formally accepted for Dr. Naughton on April 7, 2022. (ECF No. 22.)

The court issued a scheduling order in this matter on May 17, 2022. The scheduling order advised the parties, and in particular the Defendants, about the scope of mandatory disclosures, which included "all information, items, documents, *photographs*, or video or audio recordings in their or their employer's possession or control that are relevant to the issues in this case." (ECF No. 29 at 2.)

On September 12, 2022, Plaintiff filed a motion to compel Defendants to provide their mandatory disclosures, which had not been timely produced. (ECF No. 38.) They were apparently provided, albeit three months late. The photograph of Plaintiff's rash was not identified. (*See* ECF No. 41 at 1; ECF No. 43-2 at 4.)

Plaintiff propounded a request for admission that asked Dr. Naughton to admit he took a picture of Plaintiff's rash on his cell phone (so that Plaintiff's mother could show it to a dermatologist). Dr. Naughton's original response, dated November 2, 2022, stated that he was without sufficient information to recall whether he took a photo of Plaintiff's rash. (ECF No. 58 at 69.)

4

On December 2, 2022, Plaintiff filed another motion to compel. The motion sought, among other things, the photograph taken of Plaintiff's rash-covered body by Dr. Naughton on his personal cell phone. Plaintiff specifically noted that the photo was taken after Dr. Naughton allegedly told Plaintiff that he would never be able to see a dermatologist while he was in prison. (ECF No. 41.) Defendants filed a response. (ECF No. 43.)

On December 21, 2022, Plaintiff filed another motion to compel, which again requested production of any photographs taken of Plaintiff during the relevant time period. He specifically referenced the photograph Dr. Naughton took of his skin rash. (ECF No. 44 at 7-8.)

The court held a hearing on Plaintiff's motions to compel on January 27, 2023. The court ordered, among other things, that Dr. Naughton produce any photos he took of Plaintiff's rash on his cell phone, if such photos exist, and provide a supplemental response by February 6, 2023. (ECF No. 52 at 2.)

Dr. Naughton provided a supplemental response to this request for admission on June 13, 2023. (ECF No. 58 at 5.)[1] The response stated: "Admit to the extent that I took photos of many patients' ailments on my phone. I no longer have that photo since it was taken a while ago and as I was under the impression that the issue was resolved, I erased it." (ECF No. 58 at 29.)

Dr. Naughton also provided a supplemental response to the first request for admission which asked Dr. Naughton to admit that Plaintiff's rash became progressively worse over more than a year of treatment. The supplemental response stated: "Plaintiff said it was getting better and that the treatment was helping. I was advised later on that once he left prison, his symptoms went away. Since the rash went away once he left prison, he was allergic to something within the

---

[1] It is unclear why the supplemental response was not provided until June of 2023 when the court ordered that it be provided by February 6, 2023.

prison system. As long as he was exposed to that, we were not going to be able to cure him even though we tried everything." (ECF No. 58 at 27-28.)

On June 23, 2023, Dr. Naughton provided a supplemental response to Plaintiff's interrogatory 2, which asked Dr. Naughton to explain why he maintained his initial diagnosis of laundry dermatitis even though his rash was not getting better and he had changed his laundry detergent to one he used his whole life. A portion of the response states: "I took a photograph of the contact dermatitis on Plaintiff a couple of years ago, and deleted it from my phone as I thought the issue had been resolved. (ECF No. 58 at 42.)

Plaintiff engaged Dr. Naughton's counsel in a meet and confer on July 11, 2023. (ECF No. 58 at 7.)

Dr. Naughton provided a second supplemental response to the requests for admission on July 24, 2023. The second supplemental response to the request about Plaintiff's rash becoming progressively worse states: "Plaintiff informed me the rash was getting better and that the treatment was helping. I was advised later on, by the previous Deputy Attorney General assigned to this matter, that once he left prison, his symptoms went away. Since the rash went away once he left prison, he was most likely allergic to something within the prison system. As long as he was exposed to that, we were not going to be able to cure him even though we tried everything." (ECF No. 58 at 50.)

The second supplemental response to the request about the photograph stated: "Admit to the extent that I took photos of many patients' ailments on my phone. I took extended sick leave and ultimately retired. In doing so, I deleted all of the pictures I had on my phone, which included over five years of taking pictures. Based upon my present recollection, those photos

were deleted before I learned about this. After searching through the pictures on my phone, I no longer have that photo since it was taken a while ago." (ECF No. 58 at 51-52.)

Dr. Naughton's counsel sent Plaintiff an email on July 24, 2023, stating that Dr. Naughton retired on October 1, 2022, and his best recollection is that he deleted the photographs from his phone between February and May 2022, but he could not remember the specific date. (ECF No. 58 at 8.)

Dr. Naughton argues that the photo of Plaintiff's rash is not relevant to Plaintiff's Eighth Amendment claim against Dr. Naughton, and there is no evidence that he knew or should have known the photo would be relevant to Plaintiff's claim.

The court finds that Dr. Naughton waived the argument that the photograph is not relevant to Plaintiff's claim against him when he failed to assert relevance as an objection to the request for admission related to the photograph. Dr. Naughton also failed to assert relevance as an argument in response to Plaintiff's motion to compel production of the photograph. Moreover, the court foreclosed this argument when it granted Plaintiff's motion and ordered Dr. Naughton to produce the photograph, if it exists, and Dr. Naughton did not object to that order.

The pertinent question, then, is whether Dr. Naughton knew or reasonably should have known of the relevance of this photograph to anticipated litigation when he deleted the photo. As Plaintiff points out, Dr. Naughton's position on when the deletion itself occurred has been inconsistent. In his first supplemental responses to Plaintiff's discovery, he said he deleted the photo a while ago because he thought Plaintiff's issue (*i.e.*, the rash) had resolved. He then said he learned about the rash resolving once Plaintiff got out of prison from the Deputy Attorney General previously assigned to this case, which indicates that he had knowledge of the litigation when he deleted the photo (if he deleted it when he thought the issue was resolved).

1    Dr. Naughton then changed his response to state that he deleted the photo before he
2 retired on October 1, 2022, and he estimated this occurred sometime between February and May
3 2022, when he deleted all the pictures he had taken (of his inmate patients) on his phone.
4    As was noted above, this lawsuit was filed by Plaintiff on February 9, 2021. On
5 November 29, 2021, the court issued an order directing the complaint to proceed as discussed in
6 the screening order, and that order was served on the Attorney General's Office . (ECF No. 10.)
7 The Attorney General's Office filed a limited notice of appearance for the purpose of engaging
8 in settlement discussions on behalf of the Defendants on December 20, 2021. (ECF No. 12.) This
9 was two months before the earliest date Dr. Naughton deleted the photo.
10   The Attorney General's Office participated in the first of two early mediation conferences
11 on February 1, 2022. A settlement was not reached at that time because the mediator directed the
12 Attorney General's Office to obtain additional information and medical records for Plaintiff to
13 review. (ECF No. 17.) The court finds it hard to believe that the Attorney General's Office
14 would not have advised Dr. Naughton of the lawsuit filed against him before appearing on his
15 behalf at an early mediation conference. A second mediation conference was held on March 15,
16 2022, but a settlement was not reached. (ECF No. 18.)
17   A status report was filed regarding the result of the mediation conferences on Dr.
18 Naughton's behalf in mid-March of 2022, and service was formally accepted for him on April 7,
19 2022. These events all occurred during the time period when Dr. Naughton may have deleted the
20 photos from his phone. Finally, the scheduling order, which discussed the obligation to produce
21 relevant photographs, which was issued on May 17, 2022, put Dr. Naughton on notice that this
22 photograph should be preserved, and he may have deleted it at a time when he had this notice.
23   Based on this evidence, the court finds that it is more likely true than not true that

Dr. Naughton knew or should have known of this litigation when he deleted the photo, and he had a duty to preserve the photo when it was deleted.

**C. Dr. Naughton Did not Take Reasonable Steps to Preserve the Photo**

Rule 37(e) "applies only if the information was lost because the party failed to take reasonable steps to preserve the information." Fed. R. Civ. P. 37(e) advisory committee notes to 2015 Amendment. The Rule "recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." *Id*. "The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation." *Id*.

The court has concluded that Dr. Naughton knew or should have known of potential litigation when he deleted the photo of Plaintiff's rash, and the photo was relevant to this lawsuit. Dr. Naughton, therefore, failed to take reasonable steps to preserve the photo he took of Plaintiff's rash when he deleted the photo.

**D. Can the Information be Restored or Replaced through Additional Discovery?**

Rule 37(e) applies only when the ESI is lost. Fed. R. Civ. P. 37(e) advisory committee notes to 2015 amendment. Thus, the court's "initial focus [is] on whether the lost information can be restored or replaced through additional discovery." *Id*. If the information is restored or replaced, then "no further measures should be taken." *Id*. Additionally, "efforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information to claims or defenses in the litigation." *Id*.

Dr. Naughton's July 2023 second supplemental response states he searched through the pictures on his phone, and he no longer has the photo of Plaintiff's rash. According to that

9

response, Dr. Naughton reviewed the photos on his phone in July 2023, but it is unclear whether he took any other steps to determine whether the photo can be restored or replaced through additional discovery. For example, Dr. Naughton does not state whether he tried to determine if the photo might be stored in a cloud storage provider or app, or if his phone was backed up in some other manner that would result in retention of the photo such as restoring the phone from a previous backup. "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e) Advisory Committee comment to 2015 Amendment.

Finding that the ESI is lost is a prerequisite to the imposition of sanctions under Rule 37(e). Therefore, before the court can proceed further regarding Plaintiff's motion for spoliation sanctions, Dr. Naughton must undertake reasonable steps to determine whether the photo can be recovered.

The court will require Dr. Naughton to submit a supplemental brief within two weeks indicating that he has undertaken efforts to attempt to recover the deleted photo and identify the specific efforts undertaken.[2] At that point, if he still cannot recover the photo, the court will address whether sanctions are appropriate under Rule 37(e)(1) or (2).

### III. CONCLUSION

On or before **November 28, 2023**, Dr. Naughton shall submit a supplemental brief indicating that he has undertaken efforts to attempt to recover the deleted photo of Plaintiff's rash that Plaintiff contends was taken on or around April 16, 2020. He shall identify what

---

[2] It may be helpful to note that in his declaration in support of his response to Defendants' motion for summary judgment, Plaintiff states that Dr. Naughton took the photo of his rash on April 16, 2020. (ECF No. 66 at 37 ¶ 21.)

10

specific efforts were undertaken, and the results of his efforts. The court will defer ruling on Plaintiff's motion for spoliation sanctions until after the supplemental brief is filed.

**IT IS SO ORDERED**.

Dated: November 14, 2023

_____
Craig S. Denney
United States Magistrate Judge