UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NICOLAI MORK, | Case No. 3:21-cv-00077-MMD-CSD |
| Plaintiff, | ORDER |
| v. | |
| PERRY RUSSELL, *et al.*, | |
| Defendants. | |

*Pro se* Plaintiff Nicolai Mork, who was incarcerated at the Nevada Department of Correction's ("NDOC's") Stewart Conservation Camp ("SCC"), brings this action against Defendants Perry Russell, Mike Naughton, and Kathy Henderson under 42 U.S.C. § 1983. Before the Court are United States Magistrate Judge Craig Denney's Report and Recommendation (ECF No. 68 ("R&R")) to deny Defendants' motion for summary judgment (ECF No. 63 ("Motion")) and Mork's objection seeking to appeal Judge Denney's order denying spoliation sanctions (ECF No. 75 ("Appeal")).[1] Defendants timely filed an objection to the R&R (ECF No. 72 ("Objection")), to which Mork responded (ECF No. 74). For the reasons explained below, the Court overrules Defendants' Objection and adopts the R&R denying their Motion but sustains the Appeal in part.

I.   **BACKGROUND**[2]

The following facts are undisputed unless otherwise noted.

A.   **Dental Pain**

On March 21, 2020, Mork informed Henderson that he had a painful rotten tooth,

---

[1]Defendants responded to the Appeal. (ECF No. 76.)

[2]The facts in this section are adapted from the Complaint and Defendants' Motion. (ECF Nos. 1, 63.) The Court has omitted any legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

which was turning black.³ (ECF No. 8 at 4.) The condition of Mork's tooth worsened over the next ten months as the infection deepened into the root of his rotten tooth and spread to surrounding teeth. (*Id.*) Over-the-counter medications were insufficient for managing the extreme pain. (*Id.*) Between March 2020 and February 2021, Mork sent several medical Inmate Request Forms ("kites") to Henderson requesting care or stronger pain relievers to no avail. (*Id.* at 4-5; ECF No. 63-3 at 5-6, 8, 10-11, 13-14, 22, 35.)

Henderson reviewed and responded to Mork's medical kites relating to his tooth pain; however, the parties dispute the handling of Mork's dental kites. (ECF Nos. 63 at 2; 63-3 at 3; 66 at 5.) Henderson alleges that kites requesting dental care were delivered to the dental department for scheduling and therefore Henderson, who worked for the medical department, did not handle any kites requesting dental care or play any role in scheduling inmates with the NDOC dentist. (ECF No. 63 at 2-3.) Mork responds that Henderson read kites requesting dental care and advocated for inmates with severe dental needs to be seen earlier.⁴ (ECF No. 66 at 3, 5-6.)

Four case notes for Mork entered in 2020 and 2021 all indicated that Mork did not require dental care and had no dental restrictions. (ECF No. 63-2 at 3-4, 9-11.) Mork was not present for the first three case reviews but was aware of his case notes. (*Id.* at 3-4.) The final case review states that Mork told the correctional caseworker specialist that he did not have any immediate dental concerns. (*Id.* at 4, 11.) Mork, however, believes that the purpose of the case notes was to assist caseworkers with determining appropriate housing, rather than indicating his actual dental condition. (ECF No. 66 at 7-8.)

Mork wanted to file a grievance about the delays in his dental care, but Henderson and SCC correctional officers told him that he could not grieve dental issues. (ECF Nos. 66 at 9-11; 74 at 6.) Mork further alleges that Henderson told him that good inmates could get help but troublemakers who complain too much would be ignored. (ECF No. 58 at

---

³ Henderson alleges that she does not recall Mork having any dental issues while at SCC. (ECF No. 63-3 at 1.)

⁴ In his Complaint, Mork states that Henderson informed him that she had no say in grievances and would not help. (ECF No. 8 at 4.)

2

11.) Henderson responds that she never told Mork that he could not use the grievance process for dental issues and that she has always told inmates to file grievances for any reason, regardless of what the issue was. (ECF No. 63-3 at 3-4.) Whatever the reason, Mork never filed a grievance during his time at SCC. (ECF No. 72-3.)

**B.    Skin Rash**

Mork first informed Naughton of his rash in September 2019. (ECF No. 8 at 6.)[5] The rash had spread by the time Naughton saw Mork one month later. (*Id.*) Naughton first diagnosed the rash as dermatitis from the laundry and prescribed Mork oral and topical steroids, but his rash did not improve. (*Id.*) When Mork requested to see a dermatologist, Naughton told Mork that no dermatologist would see him while he was incarcerated. (*Id.*)

Mork continued to insist that Naughton's diagnosis was wrong. (*Id.*) After Naughton compared Mork's rash to images of dermatitis in a dermatology textbook and the two did not match, Naughton changed his diagnosis to a drug-poisoning rash and had Mork stop taking his medication.[6] (*Id.* at 6-7.) Naughton then threatened to have Mork transferred to a high-security prison if he continued to seek medical care.[7] (*Id.* at 7.) Naughton claims that he had no authority to send someone to another facility unless they needed to see a medical specialist for treatment that he could not provide. (ECF No. 63-4 at 3.)

In 2020, Naughton could not find any dermatologists in Reno or Carson City who would agree to see Mork, but he was able to make an appointment for Mork with a dermatologist in Las Vegas. (ECF No. 63-4 at 3.) Mork refused to go to the referral in Las Vegas and stated that his medication was alleviating his symptoms. (*Id.*)

Naughton also took a photograph of Mork's rash on his personal phone on April 16, 2020, presumably to send to an outside dermatologist found by Mork's mother. (ECF

---

[5]Mork subsequently sent 13 kites regarding his rash between November 2019 and May 2020. (ECF No. 63-3 at 29-33, 39-40, 42-44, 46-47, 49.)

[6]The parties dispute whether Naughton had Mork stop taking all prescribed medications or just one medication whose side effects included rashes. (ECF Nos. 8 at 6-7; 62-1 at 11.)

[7]Naughton disputes this allegation. (ECF No. 63-4 at 3.)

3

Nos. 58 at 4; 63-3 at 32, 71-1 at 2.) The rash got progressively worse after the photograph was taken. (ECF No. 58 at 4.) But on June 2, 2020, Mork sent a kite stating that he no longer wanted medical treatment for the rash. (ECF No. 63-3 at 26.) Mork was then released from SCC in 2021. (ECF No. 4.) Naughton eventually took extended sick leave and ultimately retired on October 1, 2022. (ECF Nos. 58 at 8; 62-1 at 5.) Between February and May 2022, he deleted the photo of Mork's rash. (ECF No. 69 at 8.)

### C. Procedural History

Mork brought Eighth Amendment deliberate indifference to serious medical needs claims against Perry Russell, Martin Naughton, and Kathy Henderson in February 2021. (ECF Nos. 1, 8.) He then moved for monetary sanctions against Naughton for spoliation of evidence in July 2023, and Defendants filed a motion for summary judgment ("Motion") a month later. (ECF Nos. 58, 63.) Judge Denney issued a R&R denying Defendants' Motion and an order denying Mork's motion for spoliation sanctions. (ECF Nos. 68, 73.) Defendants objected to the R&R, and Mork filed an objection seeking to appeal the order denying sanctions to the district court. (ECF Nos. 72, 75.)

## II. REPORT AND RECOMMENDATION

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, the Court is required to "make a de novo determination of those portions of the [R&R] to which objection is made." *Id.* The Court will thus review the parts of the R&R to which Defendants timely objected de novo but will review the rest of the R&R for clear error. *See id.*; *United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003).

Defendants object to the R&R only to the extent that it recommends finding that: (1) they provided insufficient evidence that Mork did not meet the Prison Litigation Reform Act's ("PLRA's") exhaustion requirements; (2) there are questions of material fact pertaining to Henderson's personal participation in denying Mork dental care; and (3) neither Henderson nor Naughton is entitled to qualified immunity. (ECF No. 72 at 3-4.)

However, the Court agrees with Judge Denney's analysis of these and other issues. The Court therefore overrules the Objection and adopts the R&R in full.

### A. Exhaustion

Judge Denney found that Defendants did not adequately plead the affirmative defense of exhaustion under the PLRA because they did not submit any evidence demonstrating that he had not exhausted his administrative remedies. (ECF No. 68 at 5.) *See also Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Defendants have since provided clearer evidence that Mork never filed any grievances during his tenure at SCC.[8] (ECF No. 72-3.) Mork, however, responded that the grievance process was made unavailable to him on multiple fronts, creating a genuine dispute of material fact as to whether Mork could actually access and submit grievance forms. The Motion is thus denied as to the issue of exhaustion, as discussed in further detail below.

#### 1. Refusal to Provide Grievance Forms

The PLRA provides that inmates cannot bring actions challenging prison conditions under federal law "until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Remedies are only available if they are accessible "as a practical matter"—that is, "capable of use" or "at hand." *Albino*, 747 F.3d at 1171. If prison officials thwart an inmate's efforts to use the grievance process through misrepresentation or intimidation, then those administrative remedies, though officially available, are not actually accessible and the inmate is excused from the PLRA's exhaustion requirements. *See Ross v. Blake*, 578 U.S. 632, 644 (2016).

Mork alleges that he repeatedly requested and was denied access to grievance forms because Henderson and SCC correctional officers told him that he could not grieve dental issues. (ECF Nos. 66 at 9-11; 74 at 6.) If Mork was told this, it was a misrepresentation. (ECF No. 72-4 at 10, 13-14 (discussing NDOC grievance procedures

---

[8]The Court will exercise its discretion to consider the re-submitted grievance history, as it merely clarifies the evidentiary value of previously submitted exhibits. *See Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

for dental issues).) But because Henderson denies these allegations, genuine issues of fact remain as to whether NDOC employees thwarted Mork's efforts to file a grievance regarding his dental issues, by either misrepresenting grievance procedures or otherwise denying him access to necessary grievance forms. *See Ross*, 578 U.S. at 644; *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022) (citing *Marella v. Terhune*, 568 F.3d 1024, 1026 (9th Cir. 2009)) (noting that the Ninth Circuit has excused inmates from PLRA exhaustion requirements where they could not access grievance forms).

### 2. Threats

Mork further alleges that Henderson and Naughton threatened to withhold care if he kept asking for help. (ECF No. 66 at 10-11.) To establish these threats rendered the grievance process unavailable to him, Mork "must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance . . . then demonstrate that his belief was objectively reasonable." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). A belief is objectively reasonable if there is some basis in the record that "a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id.* The Court will analyze each threat under these standards.

#### a. Threat to Withold Dental Care

Whether Henderson told Mork that 'troublemakers who complained too much would be ignored' is a factual question which the Court cannot resolve at this time. *See Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017). But if she said this, then Mork's allegation that he understood it as a threat to not file grievances may be sufficient to satisfy the subjective prong. *See id.* at 988. He could have believed that Henderson would deny or delay his medical treatment if he failed to heed her warning; however, whether he actually held this belief is also a question of material fact, as the timing of the alleged threat is unclear and he filed kites frequently. (ECF No. 63-3.)

A reasonable prisoner of ordinary firmness in Mork's position would have heeded


the warning not to complain via a grievance as well. The record shows that Mork suffered from tooth pain for several months and that this pain was not alleviated by the over-the-counter pain medication he received. Given the severity and longevity of Mork's dental pain—along with the fact that its source, his rotten tooth, could not simply resolve itself—this threat was severe enough to deter a reasonable person from risking the loss of dental care. Summary judgment on exhaustion is denied for the claim against Henderson.

### b. Threat to Transfer

Naughton allegedly told Mork that if he continued trying to get help then he would have Mork moved to a high security prison, where he would not be able to see a dermatologist. (ECF Nos. 8 at 7; 74 at 7-8.) Whether Naughton actually said this is, again, a genuine issue of material fact inappropriate for resolution on summary judgment. *See Fuller*, 865 F.3d at 1161. But such a threat would provide both a subjective and objective basis for demonstrating that Mork reasonably believed that Naughton would retaliate against him if he filed a grievance. *See McBride*, 807 F.3d at 987-88. Mork's allegation that he took the statement as a threat to not file grievances seeking treatment is sufficient to satisfy the subjective prong, as he could have reasonably believed that Naughton would take action to transfer him if he filed a grievance. *See id.* at 988. And while Naughton did not explicitly reference the grievance system, a reasonable prisoner of ordinary firmness would have come to the same conclusion and avoided submitting grievances. *See id.*; *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). Other inmates had been moved into disciplinary confinement "merely for irritating the guards by filing grievances, kites, and asking for other help." (ECF No. 74 at 10-11.) Thus, the alleged threat of retaliation may have intimidated Mork such that he did not file a grievance about Naughton's failure to treat his persistent rash, excusing him from exhausting his administrative remedies. Summary judgment on the grounds of exhaustion is thus denied as to the claim against Naughton.

Albeit for different reasons, the Court adopts Judge Denney's recommendation and finds that Defendants' Motion is denied as to the issue of exhaustion.

### B. Eighth Amendment Deliberate Indifference

Judge Denney further recommends that the Court grant Defendants' Motion as to the claims against Russell but deny the Motion as to the Eighth Amendment claims against Henderson and Naughton due to remaining disputes of material fact. (ECF No. 68 at 11, 13.) Defendants object only to Judge Denney's finding as to Henderson's liability on the grounds that the R&R failed to address Henderson's lack of personal participation in denying Mork dental care. (ECF No. 72 at 3-4.) The Court will thus review this issue *de novo* and Judge Denney's other findings for clear error.

#### 1. Serious Dental and Medical Needs

Judge Denney recommends denying Defendants' Motion as to whether Mork had a serious dental need. (ECF No. 68 at 8, 11.) Though Mork's institutional records indicated that he needed minimal dental care, Mork responded that he never spoke to a caseworker about his dental health and that he submitted several kites complaining of dental pain and requesting pain medication before undergoing a dental procedure. (*Id.* at 8; ECF No. 66 at 76-77.) The Court is satisfied that Judge Denney did not clearly err in finding that there is a genuine dispute of material fact as to whether Mork had a serious dental need.

The parties do not dispute that Mork's rash constituted a serious medical need.

#### 2. Deliberate Indifference

##### a. Henderson

Defendants argue that Judge Denney failed to address Henderson's lack of personal participation in Mork's dental care. (ECF No. 72 at 3-4.) But that is not true. Judge Denney explicitly examined Henderson's claim that she "had no involvement in [Mork's] requests for dental care" and found that Mork's proffered evidence "directly refutes this." (ECF No. 68 at 10.) To reiterate Judge Denney's findings, Mork alleges that Henderson reviewed his kites and spoke with him multiple times about his dental pain. (*Id.*) When they spoke, he asked her to help him get an earlier dental appointment and repeatedly informed her that the limited quantities of over-the-counter pain medications he could access did not adequately address his tooth pain. (*Id.*) Regardless of whether

1  Henderson had influence over dental scheduling, she had the ability to provide him with
2  additional pain medication yet gave him only sample packets of Tylenol that were
3  insufficient in both strength and quantity. (*Id.*; ECF No. 66 at 42-43.)

4  Reviewing a grievance constitutes sufficient personal participation to establish
5  liability under Section 1983 if the reviewer has some decision-making authority or ability
6  to resolve the underlying issue. *See Colwell v. Bannister*, 763 F.3d 1060, 1065, 1069-70
7  (9th Cir. 2014); *DePetro v. Minev*, No. 2:22-CV-00817-MMD-NJK, 2024 WL 343313, *8
8  (D. Nev. Jan. 26, 2024). Since Mork alleges that Henderson reviewed his kites and gave
9  him conflicting information about her ability to affect dental scheduling, Defendants'
10 Motion should be denied due to material questions of fact on this issue. There are also
11 factual questions as to whether Henderson knowingly gave Mork insufficient pain
12 medication for his tooth pain. *See Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012),
13 *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (holding
14 prison officials violate the Eighth Amendment when they persist in a treatment known to
15 be ineffective). Defendants' Motion is thus denied as to Henderson's deliberate
16 indifference to Mork's dental problems.

### b.   Naughton

18 The Court is satisfied that Judge Denney did not clearly err in denying Defendants'
19 Motion as to whether Naughton was deliberately indifferent to Mork's painful rash. (ECF
20 No. 68 at 11-13.) Naughton maintains that he pursued several appropriate treatments for
21 the rash, including having Mork stop taking medications that may cause rashes and
22 finding a dermatologist for a referral. (*Id.* at 11.) However, there is no record showing a
23 dermatology referral was ever made or that an appointment was ever scheduled. (*Id.* at
24 13.) The parties also dispute whether Naughton threatened to transfer Mork to a high
25 security prison if he kept seeking treatment for his rash, which Mork alleges deterred him
26 from seeking medical care for nine months. (*Id.* at 12.) Given these remaining factual
27 issues, the Court adopts Judge Denney's recommendation as to the claim of Eighth
28 Amendment deliberate indifference against Naughton.

### C. Qualified Immunity

Judge Denney further found that, taking the facts in the light most favorable to Mork, a reasonable jury could find that Defendants violated Mork's clearly established Eighth Amendment rights. (ECF No. 68 at 13.) Defendants objected in extremely general terms. (ECF No. 72 at 7-9.) The Court agrees with Judge Denney that Defendants are not entitled to qualified immunity at this stage of the proceedings because genuine issues of material fact exist as to whether Defendants were deliberately indifferent to Mork's serious medical and dental needs. These remaining factual questions also bear on whether they violated clearly established rights and thus are entitled to qualified immunity. *See Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014). If Mork's version of the facts prevails, there is at least a reasonable likelihood that Henderson and Naughton are not entitled to qualified immunity. *See Snow*, 681 F.3d at 988 (holding prison officials violate the Eighth Amendment when they persist in a treatment known to be ineffective); *Hunt v. Dental Dep't*, 865 F.2d 198, 200-01 (9th Cir. 1989) (finding that a three-month delay in dental treatment was sufficient to state a Section 1983 claim when the plaintiff was suffering severe pain and permanent damage to his teeth); *McGuckin*, 974 F.2d at 1062 (finding that suffering an "unnecessary continuation of his condition and pain caused [the plaintiff] 'harm' upon which a § 1983 claim can be based"); *Wesley v. Davis*, 333 F. Supp. 2d 888, 893-94 (C.D. Cal. 2004) (finding that threatening to withhold medical treatment violates the Eighth Amendment); *Davis v. Sutley*, No. EDCV 07-1415-CBM RNB, 2008 WL 1817262, at *2, *6 (C.D. Cal. Apr. 17, 2008) (finding that no reasonable dentist could believe it is lawful to deny all treatment for a patient's complaint of extreme tooth pain).

The Motion is denied as to qualified immunity. *See Lolli*, 351 F.3d at 421-22; *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002).

### D. Claim Against Russell

The Court is likewise satisfied that Judge Denney did not clearly err in recommending that the Court dismiss Mork's claim against defendant Perry Russell, as

Mork has indicated that he agreed to dismiss this claim. (ECF No. 68 at 1.)

The Court adopts Judge Denney's R&R in full.

### III.     APPEAL OF MAGISTRATE JUDGE ORDER

"A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law." LR IB 3-1(a). The Court reviews a magistrate judge's factual findings under the 'clearly erroneous' standard and their legal conclusions under the 'contrary to law' standard. *See, e.g.*, *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

When electronically stored information that should have been preserved is irretrievably lost because a party did not take reasonable steps to preserve it, the Court has two means of imposing sanctions. *See* FED. R. CIV. PROC. 37(e). Upon finding prejudice to the non-spoliating party, the Court may order measures "no greater than necessary to cure the prejudice." *Id.* And if, but only if, the Court finds that the spoliating party intended to deprive the other party of the information's use in litigation, the Court may presume that the lost information was unfavorable to the spoliator, instruct the jury that it may or must presume the information was unfavorable to the spoliator, or dismiss the action or enter a default judgment. *See id.*

In ruling on Mork's motion for spoliation sanctions, Judge Denney found that the preponderance of the evidence showed Naughton had a duty to preserve the photograph of Mork's rash when it was deleted but the deletion of the photograph did not prejudice Mork and was not intended to deprive Mork of the photo's use in litigation. (ECF Nos. 69 at 8-9; 73 at 1-5.) Mork objects to the findings on prejudice and Naughton's intent in deleting the photo. (ECF No. 75.)

### A.     Intent

Judge Denney ruled that, although Naughton "may have been negligent, or even grossly negligent, in deleting the photo," the evidence did not establish that he intended to deprive Mork of its use in this litigation. (ECF No. 73 at 5.) *See also* FED. R. CIVIL PROC.

11

37(e)(2). While inconsistent, Naughton's discovery responses all indicate that the deletion was unrelated to this case. The Court is therefore satisfied that Judge Denney did not clearly err in holding that sanctions are not appropriate under Rule 37(e)(2).

### B.     Prejudice

Judge Denney also found that Mork had not sufficiently established prejudice because losing the photograph did not impair his ability to go to trial or "threaten[] to interfere with the rightful decision of the case." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). The Court agrees that the deletion of the photo has not impaired Mork's ability to go to trial. Even without the photograph, his claims survived summary judgment.

However, the Court finds clear error in concluding that the spoliation of the photograph does not threaten to interfere with the rightful decision of the case. Judge Denney is correct that Mork's claim against Naughton turns on the allegation that Naughton threatened to transfer Mork if he requested further medical treatment. But his conclusion that the photograph is not related to this allegation is clearly erroneous. There is no direct evidence of any threat against Mork. Thus, Mork must prove that he was threatened through circumstantial evidence. It is clear that Mork intends to do so, in part, by arguing that he never would have terminated treatment for his rash if Naughton had not threatened to transfer him. More information about the rash could corroborate or undermine this claim. Judge Denney is correct that Mork and Naughton may still testify as to the condition of the rash, but witness testimony is subjective, often inconsistent, and prone to error. *See* U.S. COURTS FOR THE NINTH CIRCUIT, MANUAL OF MODEL CIVIL JURY INSTRUCTIONS: 1.14 CREDIBILITY OF WITNESSES (2017), https://perma.cc/SU77-NH2J. A photograph, on the other hand, provides an objective picture of the rash, which could better allow a jury or expert witness to diagnose the rash and estimate the time it would have taken to heal. Losing the photograph threatens to interfere with the resolution of the case by introducing additional uncertainty as to these material facts.

Therefore, the Court may grant sanctions that are "no greater than necessary to cure the prejudice" and not predicated upon a finding of intent to deprive the other party

of information in litigation. Mork has been prejudiced by losing objective evidence of the condition of his rash in April 2020; therefore, providing a future jury with information they would have learned from the photo is an appropriate measure to cure that prejudice. If this case goes to trial, the Court will consider language communicating to the jury that Naughton took a photograph of Mork's rash on April 16, 2020, and describing the nature and extent of the rash at that time.

The Appeal is therefore sustained as to sanctions under Rule 37(e)(1) but overruled as to sanctions under Rule 37(e)(2).

## IV.  CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' objection (ECF No. 72) to Judge Denney's Report and Recommendation is overruled.

It is further ordered that Judge Denney's Report and Recommendation (ECF No. 68) is adopted.

It is further ordered that Defendant's Motion for Summary Judgment (ECF No. 63) is granted as to the claim against Perry Russell but denied as to the claims against Mike Naughton and Kathy Henderson.

The Clerk of Court is directed to ensure the docket reflects dismissal of the claim against Perry Russell.

It is further ordered that the Motion to Extend (ECF No. 70) is denied as moot.

It is further ordered that Plaintiff's objection to Judge Denney's Order on Motion for Spoliation Sanctions (ECF No. 75) is sustained as to sanctions under Rule 37(e)(1) but overruled as to sanctions under Rule 37(e)(2). The Court will consider instructing the jury that Naughton took a photograph of Mork's rash on April 16, 2020, and describing the nature and extent of the rash at that time.

DATED THIS 12th Day of February 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE