ANNA HOLLAND EDWARDS
Colorado Bar No. 35811
RACHEL KENNEDY
Colorado Bar No. 54038
Holland, Holland Edwards, & Grossman, LLC
1437 N. High Street
Denver, CO 80218
Phone: (303) 860-1331
anna@hheglaw.com
*Attorneys for Plaintiff, pro hac vice*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NICOLAI MORK,

Plaintiff,

vs.

PERRY RUSSELL, et al.,

Defendants.

Case No. 3:21-cv-00077-MMD-CSD

**PLAINTIFF'S TRIAL BRIEF**

## I. INTRODUCTION

Plaintiff Nick Mork, by and through his counsel of record, files this trial brief in anticipation of trial, which is scheduled to begin on June 17, 2025. This trial brief is submitted in compliance with Local Rule 7-3.

This jury trial involves two § 1983 claims brought by Plaintiff Mork, a formerly incarcerated inmate, against Defendants Nurse Kathy Henderson ("Nurse Henderson") and Dr. Martin Naughton ("Dr. Naughton"), former employees of the Nevada Department of Corrections ("NDOC"), alleging deliberate indifference to his serious medical needs, constituting cruel and unusual punishment under the Eighth Amendment.

Plaintiff will be represented at trial by Anna Holland Edwards and Rachel Kennedy, along with local counsel Adam Breeden.

## II. MEMORANDUM POINTS AND AUTHORITIES

### A. <u>Overview of the Case</u>

Mr. Mork was in custody of the NDOC from August 2018 until March 2021.[1] For the majority of his incarceration, Mr. Mork was housed at Stewart Conservation Camp ("SCC").[2]

**1*. Deliberate Indifference to Mr. Mork's Serious Rash Related Medical Needs (against Defendants Henderson and Naughton)***

In the fall 2019, Mr. Mork noticed brown spots covering his arms which prompted him to ask Nurse Henderson to see Dr. Naughton, the prison doctor.[3] In November 2019, Mr. Mork's rash had spread and he submitted another request to see Dr. Naughton.[4] Dr. Naughton diagnosed Mr. Mork with laundry dermatitis and prescribed oral and topical steroids to treat the rash.[5] While Mr. Mork's rash spread and became more severe, Dr. Naughton became increasingly frustrated with Mr. Mork's continued requests and persisted in the obviously erroneous diagnosis and with the obviously ineffectual treatment.[6] Mr. Mork submitted several kites regarding his rash between November 2019 and May 2020.[7] Although he continued to strictly adhere to Dr. Naughton's treatment plan, Mr. Mork's rash worsened.[8] Mr. Mork requested to see a dermatologist.[9] Dr. Naughton denied Mr. Mork access to see a dermatologist. Both Dr. Naughton and Nurse Henderson repeatedly mocked Mr. Mork's suffering and threatened to withhold medical care because he was becoming a "troublemaker" by continuing to advocate for himself for medical attention. Ultimately, Dr. Naughton threatened to have Mr. Mork transferred to a high security prison if he continued requesting medical assistance. To avoid this punitive loss of freedom, on Dr. Naughton's instruction, Mr. Mork submitted a kite stating he no longer wanted medical treatment for his rash.[10]

---

[1] Stipulated Exhibit 15 – (Def 104)
[2] *Id.*
[3] Mork Decl. at 1
[4] Stipulated Exhibit 14 (Def 077)
[5] Stipulated Exhibit 14 (Def 075)
[6] Stipulated Exhibit 14 (Def 068)
[7] *See* Stipulated Exhibit 14
[8] Stipulated Exhibit 14 (Def 068)
[9] Stipulated Exhibit 14 (Def 068)
[10] Stipulated Exhibit 14 (Def 054)

### ***2. Deliberate Indifference to Dental Pain (against Defendant Henderson)***

During Mr. Mork's incarceration he developed severe dental issues.[11] In March 2020, Mr. Mork submitted a kite to Nurse Henderson requesting to see a dentist and explaining that his tooth had turned partially black.[12] Mr. Mork also made frequent verbal requests to Nurse Henderson, begging for help with his extremely painful dental emergency. Over the next eleven months, Mr. Mork submitted additional written kites and frequently asked Nurse Henderson to be seen emergently by the dentist, but he was repeatedly told that he would be seen in the order of his request and not be escalated to the front of the list. Mr. Mork watched in agony as other inmates were taken to dental appointments for routine care as his teeth and dental infection continued to worsen, causing unrelenting pain and suffering.[13] Mr. Mork was in near constant pain, experienced difficulty eating, and pieces of his teeth began to break off and his mouth constantly bled.[14] Additionally, throughout the same time period, Nurse Henderson punitively withheld adequate pain medication, not even providing Mr. Mork with the over-the-counter medications she routinely gave to other inmates. She knew of and refused to take steps to facilitate dental care for Mr. Mork, including addressing the pain and distress caused by his painful, worsening, rotten teeth. Between his first dental kite submitted March 2020 until March 11, 2021, shortly before Mr. Mork was released, he was denied any access to a dentist by Nurse Henderson.[15] Mr. Mork underwent immediate extraction of three teeth and multiple subsequent dental procedures upon his release.

## B. <u>Overview of Trial Witnesses</u>

Plaintiff will be calling the following witnesses to testify at trial. Plaintiff requests a sequestration order. The parties are working together on schedule and availability of

---

[11] *See* Stipulated Exhibit 14 (Def 063)
[12] *Id.*
[13] *See* Stipulated Exhibit 14 (Def 042)
[14] Mork Decl. at ¶¶ 18, 31
[15] Stipulated Exhibit 14 (Def 033)

witnesses and agreed that subpoenas are not necessary for any of the below witnesses.

**1. Nick Mork (Plaintiff)** is a party witness who was previously incarcerated at SCC. He will testify about his experience with the medical care he received at the facility and about his injuries.

**2. Nurse Kathy Henderson (Defendant)** is a party witness who was previously employed by NDOC as a nurse and worked at SCC during the relevant years of 2018 through 2021.

**3. Dr. Martin Naughton (Defendant)** is a party witness who was previously employed by NDOC as a doctor and worked at SCC during the relevant years of 2018 through 2021.

**4. Adam Plumer** is a non-party witness who served on Mr. Mork's criminal defense team and had conversations with Mr. Mork about his teeth and rash while he was incarcerated. Mr. Plumer is expected to testify about the communications he had with Mr. Mork and with NDOC about Mr. Mork's care needs.

**5. Dr. Greg Fishbein** is a non-party witness who went to college with Mr. Mork and maintained a friendship throughout Mr. Mork's incarceration. Dr. Fishbein is expected to testify about the communications he had with Mr. Mork about his rash, including sending him a textbook on dermatology to help determine the cause of the rash.

**6. Dr. Thomas Flynn (Plaintiff's Expert)** is a non-party witness and oral and maxillofacial surgeon who is expected to testify about Mr. Mork's dental issues and care during his incarceration and upon release.

**7. Warden Nethanjah Brietenbach** is a non-party witness who currently serves as the Warden of SCC, the prison where Mr. Mork was incarcerated. Warden Brietenbach is expected to testify about the NDOC policies and practices related to medical and dental care.

Plaintiff may also call **Patty Smith** is a non-party witness who is the former Chief of Nursing for NDOC at SCC and is expected to testify about the NDOC policies and practices related to medical and dental care.

**C. Overview of Exhibits and Agreements of Counsel[16]**

The parties have worked together to limit evidentiary issues related to proposed Exhibits and made the following agreements:

1. The jury will be told that Mr. Mork pled guilty to a felony for which he was serving time in NDOC from August of 2018 to March of 2021. There will be no reference to Mr. Mork's criminal charges or convictions or arrest, unless Plaintiff injects the same into the case and opens the door.
2. There are no challenges to authenticity among the proposed exhibits;
3. Most exhibits have been stipulated, with the agreement that the exhibits will be moved into evidence without objection, but that exhibits are not automatically admitted;
4. The previous warden, Perry Russell, and Charles Daniels, the director of NDOC, each gave a declaration during this case about practices and policies during Mr. Mork's incarceration. Counsel for the defense has indicated that both Warden Brietenbach and Director of Nursing Patty Smith (as relevant to her area) are familiar with and agree with the content of both declarations and will testify consistent with those declarations, and that the declarations are available for impeachment if necessary.
5. Adam Plumer is testifying regarding his conversations with Mr. Mork and attempts to help him get dental care. Mr. Plumer was part of Mr. Mork's criminal defense team. The representation regarding the criminal case was over, and Mr.

[16] The parties are continuing to work on a proposed stipulated facts instruction.

Mork does not waive privilege as to his prior criminal case representation. The conversations at issue are not privileged, but to the extent they were, any waiver is partial and only related to his medical and dental needs.[17]

**D. Applicable Law**

Plaintiff brings his claims against each Defendant under 42 U.S.C. § 1983. To prevail on his § 1983 claims, Plaintiff must prove each of the following elements by a preponderance of the evidence as to each Defendant: (1) that the Defendant acted under color of state law, and that (2) the act(s) or failure(s) to act of the Defendant deprived Plaintiff of his right under the United States Constitution. *Rhymes v. Keast, et al.*, 2020 WL 7409588 (D. Nev. 2020). The constitutional right at issue in this case is provided under the Eighth Amendment. Under the Eighth Amendment, a convicted prisoner has the right to be free from cruel and unusual punishments and, therefore, has a right to constitutionally adequate medical treatment. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976).

"Deliberate indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988); *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013).

Acts or statements of prison personnel may constitute direct evidence of indifferent or hostile attitudes toward prisoner's medical needs. *See, e.g., Marcotte v. Monroe Corrections*

---

[17] Attorney-client and work product privilege are two of the most important protections as it seeks to "encourage clients to make full disclosure to their attorneys," especially considering an attorney cannot offer comprehensive advice without all available information. *Hernandez v. Tannien*, 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting *Upjohn Co. v. United States*, 499 U.S. 383, 389 (1981). Disclosing a privileged communication or raising a claim that requires disclosure of a protected communication results in waiver as to all other communications *on the same subject*. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (citing *United States v. Nobles*, 422 U.S. 225, 239-40 (1975) (emphasis added); *see also Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to communications . . . on the same subject").

*Complex*, 394 F. Supp. 2d 1289, 1296 (W.D.Wash. 2005) (reasonable jury may conclude nurse was deliberately indifferent based on nurse threating the plaintiff with "the hole" if he kept complaining); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (nurse telling prisoner that if he continued to "hassle" the medical staff he would be "locked up" could support the conclusion that she was deliberately indifferent);" *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987) (doctor ridiculed transgender prisoner and completely denied care); *Mullen v. Smith*, 738 F.2d 317, 318–19 (8th Cir. 1984) (prisoner was subjected to "ridicule and derision" in response to complaints of pain and inability to walk).

Doctors and Nurses must allow access to specialists when indicated and the 9th Circuit has said unequivocally that persisting in treatment known to be ineffective constitutes deliberate indifference. *See, e.g.*, *Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022); *Hayes v. Snyder*, 546 F.3d 516, 526 (7th Cir. 2008) (refusal to refer to a specialist where doctor did not know cause of reported extreme pain made no sense and could support deliberate indifference finding); *Greeno*, 414 F.3d at 655 (holding refusal to refer prisoner to a specialist or order an endoscopy for two years despite intense abdominal pain could be deliberate indifference); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (holding six weeks' delay in sending prisoner to a dentist, resulting in infection and loss of teeth, raised an Eighth Amendment claim); *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001) (failure to make timely referral to specialist or tell the patient to seek one out was deliberate indifference); *Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir. 1998) (two-month refusal to send a prisoner with "classic" symptoms of a ruptured tendon to a specialist could constitute deliberate indifference); *Parham v. Johnson*, 126 F.3d 454, 458–57 n.7 (3d Cir. 1997) (denial of access to an ear specialist supported a deliberate indifference claim).

## III. ANTICIPATED LEGAL ISSUES

### A. <u>Spoliation</u>

Mr. Mork repeatedly sought medical attention from Dr. Naughton for his persistent and debilitating full body skin rash. After months of suffering due to ineffective treatments for an obviously incorrect diagnosis and denial of repeated requests to see a dermatologist, Mr. Mork requested that Dr. Naughton photograph his rash so he could provide it to his mother to try to get opinions as to its cause. On April 16, 2020, Dr. Naughton photographed Mr. Mork's rash on his personal cellphone. Although Dr. Naughton never sent the photograph to anyone, it remained saved on his cellphone.

On February 9, 2021, Mr. Mork first attempted to file suit in this matter, naming Dr. Naughton as a defendant. In February 2022, the parties attended a mediation session. Sometime thereafter, between February 2022 and May 2022, Dr. Naughton deleted the photograph of Mr. Mork's full body rash. Mr. Mork struggled to get basic discovery in this case and filed multiple motions to compel any disclosures, including the photograph. Dr. Naughton has given inconsistent and varying responses about the photograph and its deletion, ranging from allegedly not remembering that he ever took a photo, to explaining that he deleted it because the Attorney General assigned to his case told him that Mr. Mork's rash improved after he was released. Magistrate Judge Denney summarized these various responses and supplements at ECF 69, including:

- On November 2, 2022, Dr. Naughton responded to a Request for Admission asking him to admit he took a photograph, stating: "he was without sufficient information to recall whether he took a photo of Plaintiff's rash."
- On January 7, 2023, Magistrate Denney ordered Dr. Naughton to supplement his response regarding the photograph by February 6, 2023. Dr. Naughton did so on June 13, 2023, stating: "Admit to the extent that I took photos of many patients' ailments on my phone. I no longer have that photo since it was taken a while ago and as I was under the impression that the issue was resolved, I erased it."

- On July 24, 2023, Dr. Naughton provided a second supplemental response admitting that he learned that Mr. Mork's rash had resolved after he left prison from the "Deputy Attorney General assigned to this matter."
- Also on July 24, 2023, Dr. Naughton's counsel told Plaintiff by email that Dr. Naughton's best recollection of the timing of the deletion of the photograph was between February and May of 2022.

Plaintiff contends that there is a sufficient basis to find that this photograph was deleted in bad faith, given it was deleted over a year into litigation about the rash, only after Dr. Naughton had talked to a lawyer defending his conduct and understood he was being sued about the rash. That Dr. Naughton swore under oath he did not know if he even took a picture initially and then subsequently gave specific memories about why he deleted the picture also supports a finding of bad faith.

This Court has found that, regardless of the intent in deletion, however, that Mr. Mork has been prejudiced by the deletion, noting that a photograph would have provided "objective evidence of the condition of his rash in April 2020" which could better allow the jury to appreciate the extent and severity of his rash at the time of the photograph, rather than his testimony alone. ECF No. 77 at 12-13. This Court further noted that, while Mr. Mork can testify about the rash and that, at trial, the Court "will consider language communicating to the jury that Naughton took a photograph of Mork's rash on April 16, 2020, and describing the nature and extent of the rash at that time." *Id*. Objective evidence, like the deleted photograph, would have allowed Mr. Mork to show the jury accurately what his rash looked like – something much better seen than described in words.

Under Federal Rule of Civil Procedure 37(e)(1), when a party fails to preserve electronically stored information, here Dr. Naughton's photograph, and the failure to preserve results in prejudice to the other party, a court "may order measures no greater than necessary

to cure the prejudice." Fed. R. Civ. P. 37(e)(1). A court has wide discretion to determine an appropriate remedial sanction as it must evaluate what is appropriate on a case-by-case basis. *See* Fed. R. Civ. P. 37(e)(1) advisory committee's notes. The only limitation on a court's discretion is that a sanction under Rule 37(e)(1) cannot be more severe than the sanctions listed in Rule 37(e)(2). *Id.* ("Care must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) . . .."); *see also Gregory v. State of Montana*, 118 F.4th 1069, 1078 (9th Cir. 2024) (illustrating the difference between 37(e)(2) sanctions and 37(e)(1) sanctions).

An appropriate and measured remedial sanction is to instruct the jury that Mr. Mork's demonstrative photos are consistent with what would have been shown in the photograph had it not been deleted. Allowing an instruction regarding the demonstratives of a very similar skin rash is "no greater than necessary to cure the prejudice" and has the same effect of providing a jury with information they would have learned from the photograph Dr. Naughton took.

## IV. CONCLUSION

Based on the facts of this case, all Defendants were deliberately indifferent to Plaintiff's serious medical needs. Their deliberate indifference caused him to suffer painful and debilitating injuries, associated significant emotional distress, and economic harm.

DATED this 10th day of June, 2025.

By: */s/ Anna Holland Edwards*

ANNA HOLLAND EDWARDS
Colorado Bar No. 35811
RACHEL KENNEDY
Colorado Bar. No. 54038
Holland, Holland Edwards, & Grossman, LLC
1437 N. High Street
Denver, CO 80218
Phone: (303) 860-1331
anna@hheglaw.com
*Attorneys for Plaintiff, pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June 2025, the foregoing **PLAINTIFF'S TRIAL BRIEF** via this Court's electronic filing system. Parties that are registered with the Court's electronic filing system will be served electronically.

*/s/ Brooke Thiele-LaForest*
Brooke Thiele-LaForest
Paralegal