AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
MARK HACKMANN, Bar No. 16704
  Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1150
E-mail:  drands@ag.nv.gov
         mhackmann@ag.nv.gov

*Attorneys for Defendants*
*Kathleen Henderson*
*and Dr. Martin Naughton*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NICOLAI MORK,<br><br>                    Plaintiff,<br><br>vs.<br><br>PERRY RUSSELL, et al.,<br><br>                    Defendants. | Case No.  3:21-cv-00077-MMD-CSD<br><br>**DEFENDANTS' TRIAL BRIEF** |

Defendants, Kathleen Henderson and Dr. Martin Naughton, by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, Senior Deputy Attorney General, Douglas R. Rands, and Deputy Attorney General, Mark Hackmann hereby submit Defendant's Trial Brief pursuant to this Court's Order Regarding Trial. ECF No. 103.

## I.    NATURE OF THE ACTION

This is a pro se civil rights action brought by Plaintiff, Nicolai Mork (Mork), asserting claims arising under 42 U.S.C §1983. Mork alleges two (2) Eighth Amendment deliberate indifference to serious medical need claims against Defendants, Kathleen Henderson (Henderson) and Martin Naughton (Naughton) and one (1) Eighth Amendment conditions of confinement claim against Defendant Perry Russell (Russell).

Defendants filed their motion for summary judgment on August 21, 2023. ECF No. 63. Mork filed a response to the Defendants' motion for summary judgment (ECF No. 66) then

Defendants a reply (ECF No. 67). The Magistrate Judge submitted a report and recommendation regarding Defendants' motion for summary judgment on November 14, 2023. ECF No. 68. This Court reviewed the fully-briefed motion for summary judgment as well as the report and recommendation and entered an order denying summary judgement as to the two Eighth Amendment claims against Henderson and Naughton and granting as to the conditions of confinement claim against Russell. ECF No. 77.

The case is proceeding against the remaining Defendants, Henderson and Naughton, on one claim each of Eighth Amendment deliberate indifference to a serious medical need. The claim against Henderson is that she refused and/or delayed treating Mork's dental issues. The claim against Naughton is that he delayed and/or refused to treat Mork's skin rash.

## II.    BRIEF DISCUSSION OF KEY FACTUAL AND LEGAL ISSUES

Mork is a former inmate formerly incarcerated within the Nevada Department of Corrections (NDOC) and housed at Northern Nevada Correctional Center (NNCC) and Stuart Conservation Camp (SCC).  Mork is suing multiple Defendants for events that allegedly took place while he was incarcerated at those facilities.

Mork claims that for period of ten months, beginning in January of 2020, Defendants failed to provide him adequate dental care for a painful tooth. ECF No.1 at 4. Plaintiff claims that Defendant Henderson failed to address this pain. *Id*. Plaintiff further alleges that he sought treatment of a skin condition from Defendant Naughton. ECF No. 1 at 6. Mork claims that his condition worsened and that Defendant Naughton ceased provided treatment of Mork's skin condition and threatened to transfer Plaintiff to another facility based on his continued complaints. *Id*. at 7.

## III.    UNDISPUTED FACTS

### A.    Mork's Eighth Amendment Deliberate Indifference to a Serious Medical Needs Claim against Defendant, Kathy Henderson

Mork's Eighth Amendment claim alleges that on or about March 21, 2020, Mork told Henderson about a rotten tooth that was turning black, causing Mork extreme pain. (ECF No. 7 at 3:23-24, 5:21-24). He claims that over the course of ten (10) months he continued

to request treatment as his tooth got worse, spreading to his surrounding teeth, and that Henderson still took no action to help Mork. (*Id.* at 5:24-27).

As a general matter, any Inmate Request Forms (Kites) requesting medical or dental care were sorted between their appropriate departments and given to those departments to be followed up on. And so, as a Correctional Nurse II (CNII), Defendant Henderson did not work for the dental department, nor did she play a role in scheduling inmates with the NDOC Dentist. Additionally, Defendant Henderson does not recall Mork having dental issues at SCC, while also remembering him having issues with a rash at SCC. Moreover, Defendant Henderson reviewed Mork's Medical Kites and did not handle the Kites that requested dental care. Notably, the kites requesting dental care were provided to the dental department for appropriate scheduling. (*Id.*)

Moreover, on May 15, 2020, a case note for Mork indicates that Mork's dental as "DEN 1/1. A "DEN 1/1" case note indicates that no dental care or requires minimal routine comprehensive dental treatment. The indication of a "DEN 1/1" is entered by caseworkers after receiving the appropriate medical and dental codes from the medical department, which represents any necessary dental care and restrictions for the inmate. Since caseworkers do not have access to medical information, caseworkers are given medical and dental codes that demonstrate any ongoing medical or dental care, as well as any restrictions for the inmate. And that information helps caseworkers determine appropriate restrictions for placement and housing. At the time, Mork was not present for this case note entry, but was aware that it was being entered. Notably, during this process an inmate may choose to be present for the case note, however, if that inmate chooses not to be present, the inmate receives a form the Caseworker for the inmate to update any information as necessary.

A second case note was entered on October 21, 2020. As with the first note, this note indicated a "DEN 1/1," indicating no dental care or requires minimal routine comprehensive dental treatment. Four months later, a third case note indicates "DEN 1/1." ///

And finally, two weeks later, a fourth case note memorialized that Mork has no immediate dental concerns and that none are noted at that time.

Lastly, Mork failed to address these allegations during any times in which they occurred through the grievance process.

### B. Mork's Eighth Amendment Deliberate Indifference to a Serious Medical Needs Claim against Defendant, Martin Naughton

Mork also proceeds on an Eighth Amendment deliberate indifference to a serious medical needs claim against Defendant Naughton, as he claims Dr. Naughton threatened to move Mork to a high-security prison if Mork continued to seek medical care for a skin rash. (ECF No. 7 at 9:19-21; 13:23-26).

Dr. Naughton made an appointment for Mork in Las Vegas with a specialist in order to receive the needed medical treatment. Moreover, Dr. Naughton did not have the authority to simply send someone to another facility unless it was for that individual to see a medical specialist. Dr. Naughton took Mork's medical condition seriously and was taking actions consistent with the Eighth Amendment to ensure the medical condition was treated. Notably, Mork refused to go to the referral in Las Vegas. Nonetheless, even without the transfer, Mork concedes the treatment he was receiving from Dr. Naughton was helping.

Additionally, Mork failed to address any alleged threats made by Dr. Naughton during any times in which they occurred through the grievance process.

## IV.    FACTS TO BE DETERMINED AT TRIAL

The following facts will be determined at trial:

A.    Did Henderson take any adequate or reasonable steps to respond to Mork's unmitigated dental pain and/or dental condition?

B.    Whether Naughton referred Mork to a dermatologist?

C.    Whether Naughton threatened to send Mork to a high security NDOC facility if he did not stop asking for medical care for his unresolved rash?

///

D.      Whether Mork was in extreme pain from his dental condition and/or extreme discomfort from his rash?

E.      Whether Mork has met his burden of producing evidence supporting the facts set forth above, i.e., whether he can prove that the individual defendants violated his Eighth Amendment rights?

F.      Whether any form of damages is available to Mork for any alleged failures?

## V.    LEGAL ISSUES TO BE DETERMINED AT TRIAL

### A.    The Defendants are Entitled to Qualified Immunity Because None of the Defendants Violated Mork's Eighth Amendment Rights Against Cruel and Unusual Punishment

The defense of qualified immunity protects state officials sued in their individual capacities from damages unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001).

Therefore, regardless of whether a constitutional violation occurred, state officers prevail if the right asserted by the plaintiff was not "clearly established" or if the state officers could have reasonably believed their conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). The Plaintiff bears the burden of proving that a right allegedly violated was clearly established at the time of the alleged misconduct. *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) (citing *Davis v. Scherer*, 468 U.S. 183, 197, 104 S. Ct. 3012 (1984)).

When a public official acts in reliance on a statute or regulation, that official is entitled to qualified immunity unless the statute or regulation is "patently violative of fundamental constitutional rights." *Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994)).

A reasonable but mistaken belief one's actions are lawful, based on facts or legal authority, entitles a defendant to qualified immunity. *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991). Qualified immunity shields government officials from suit against constitutionally deficient decisions that reasonably misapprehend the law; it extends to "all

but the plainly incompetent or those who knowingly violate the law." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (citations omitted). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (citations omitted).

In *Schroeder*, the Ninth Circuit Court of Appeals discussed the importance of deciding immunity questions early on in the litigation. The Court stated:

> The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The rule of qualified immunity "'provides ample support to all but the plainly incompetent or those who knowingly violate the law.'" "Therefore, *regardless of whether the constitutional violation occurred*, the officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful." Furthermore, "[t]he entitlement is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial."

*Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995) (emphasis in original; internal citations omitted).

When conducting the qualified immunity analysis, district courts "ask (1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 and 236(2009)).

The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240-42. Whether the right is established is an objective inquiry, and it turns on whether a reasonable official in the defendant's position should have known at the time that his conduct was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639-40 (1987); *Lacey v. Maricopa Cnty*, 693 F.3d 896, 915 (9th Cir. 2012).

Stated differently, only where a state official's belief as to the constitutionality of his conduct is "plainly incompetent" is qualified immunity unavailable. *Stanton v. Sims*, 571 U.S. 3 (2013) (per curium).

Although the second inquiry is highly deferential, it is not necessary that the precise action has previously been held unlawful for a right to be "clearly established." *Anderson*, 483 U.S. at 640. Therefore, the Court must assess qualified immunity "in light of the specific context of the case." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York,* 566 F.3d 817, 821 (9th Cir. 2009).

1. **Eighth Amendment Deliberate Indifference to a Serious Medical Needs Standard**

To sustain an Eighth Amendment claim, a plaintiff must show that a defendant was deliberately indifferent to plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference requires proof of two elements: (1) a serious medical need, and (2) the defendant's deliberate indifference in response. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

First, to establish the objective prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain*." Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). Specifically, a serious medical need is one that "significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-1060 (9th Cir. 1992) overruled on unrelated grounds by *WMX Techs., Inc. V. Miller*, 104 F.2d 1133, 1136 (9th Cir. 1007).

Second, to establish the subjective prong, "to show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (internal quotation marks and citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th

Cir.2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Rather, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); see also *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir.1989) (citation omitted).

Thus, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Penner*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). "[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986).

However, prison officials who know of a substantial risk to an inmate's health are liable only if they responded unreasonably to the risk, even if the harm ultimately was not averted. *See Farmer*, 511 U.S. at 844. What is reasonable depends on the circumstances, including the defendant's authority, capabilities and resources. *Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014) (en banc). Thus, it is appropriate to consider the resources available to a prison official who lacks budgetary authority when evaluating whether the official is liable for damages in a § 1983 suit. *Peralta*, 744 F.3d at 1083.

///

1
2

           **a.**     **Mork Cannot Prevail on His Medical Deliberate Indifference Claim**

3

4

5

6

7

8

The evidence demonstrates that Henderson played no role in either denying or delaying, nor did Henderson intentionally interfere with Mork's dental care. In order to establish the subjective prong, deliberate indifference requires evidence of a prison official who "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 83.

9

10

11

12

13

14

Here, Henderson was not deliberately indifferent because she played no role in delaying, denying or intentionally interfering with Mork's dental care. Specifically, after reviewing Mork's kites, Henderson would receive those kites pertaining to dental care and provide those kites to the dental department for appropriate scheduling. Additionally, policy requires Henderson as a CNII to sort each medical kite between medical or dental and give that to the respective department to be followed up on.

15

16

17

18

19

20

21

22

23

Given that, the evidence demonstrates that no genuine issue of material fact exists in relation to Henderson's alleged deliberate indifference. Namely, as a CNII she did not have a role in scheduling inmates to for dental appointments. In addition, Henderson would send any dental kites to the dental department as soon as possible. And so, the scheduling of Mork's dental treatment was done by the appropriate department to make the scheduling. Therefore, Henderson could not have delayed or denied Mork's dental treatment because she did not schedule them. Additionally, there is no evidence to support that Henderson *knew of and disregarded* an excessive risk to Mork's health because she simply sorted medical kites and gave them to their respective department.

24

25

26

27

28

Accordingly, Mork fails to meet the burden as to the subjective prong of an Eighth Amendment deliberate indifference to a serious medical needs claim. Also, Mork fails to support his claim as to Henderson's alleged deliberate indifference because she in fact did not play a role in scheduling inmates for dental treatment. Rather, she would provide the medical kites to their respective departments for scheduling.

### b.    Mork Cannot Prevail on His Claim that Defendant Naughton Threatened to Send Mork to a "High Security Prison" if he Continued Seeking Treatment

Mork fails to prove his claim as to Naughton threatening to send Mork to a "high security" prison if he continued seeking medical treatment. Dr. Naughton, in fact attempted to send Mork to Las Vegas in order to see a dermatologist, however, Mork refused.

Based upon the allegation that proceeded through screening, this analysis is done primarily under the direction of deliberate indifference. (ECF No. 7 at 10:1-3). Notably, the allegation of threat, because if true, demonstrates a purposeful act intended to prevent Mork from receiving proper medical care. (*Id*.). Therefore, Mork must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Penner*, 439 F.3d at 1096.

Here, Dr. Naughton did not threaten to send Mork to a "high security" prison if he continued to seek medical treatment. Rather, Dr. Naughton recommended a short-term transfer in order for Mork to see a specialist in Las Vegas, as no specialists were unavailable in either Reno or Carson City. This short-term recommendation is not only a threat or deliberate indifference, but exactly the opposite. It establishes that Dr. Naughton took Mork's medical condition seriously and was taking actions consistent with the Eighth Amendment to ensure the medical condition was treated. However, Mork refused to go to the referral in Las Vegas. Nonetheless, even without the transfer, Mork concedes the treatment he was receiving from Dr. Naughton was helping. Further, and even though Mork refused the transfer, it is undisputed that Dr. Naughton only has authority to send someone to another facility for medical purposes, and even then, the Offender Management Division must determine the appropriate staffing and security levels necessary to execute the transfer. Lastly, there is no evidence outside of Mork's allegations of such a threat, even through NDOC's grievance process.

Given that, Mork fails to prove his claim as to Dr. Naughton's alleged threat to send Mork to a "high security" prison if he continued seeking medical treatment. Notably, Dr.

1  Naughton did not have the authority to do so, rather Dr. Naughton attempted to set up a

2  specialist in Las Vegas for Mork, but he refused to go.

3      **B.    The Defendants Were Not on Clear Notice Their Actions Violated**
       **Mork's Eighth Amendment Constitutional Right Against Cruel and**
4      **Unusual Punishment**

5      Qualified immunity "provides ample protection to all but the plainly incompetent or

6  those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "For a

7  constitutional right to be clearly established, its contours 'must be sufficiently clear that a

8  reasonable official would understand that what he is doing violates that right.' *Hope v.*

9  *Pelzer*, 536 U.S. 730, 739 (2002). Qualified immunity is not available to an official "when it

10 would be clear to a reasonable officer that his conduct was unlawful in the situation he was

11 confronted." *Id*. at 746 (quoting *Saucier v. Katz*, 533 U.S. 194, 202, overturned in part on

12 different grounds by *Pearson*, 555 U.S. 223). Additionally, qualified immunity "would be

13 defeated [only] if an official knew or reasonably should have known that the action, he took

14 within his sphere of official responsibility would violate the constitutional rights of the

15 plaintiff." *Id*. at 349 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)) (internal quotation

16 and emphasis omitted).

17     **1.    Defendant Henderson is Entitled to Qualified Immunity**
       **Because There is no Case Law Giving Her Clear Notice That**
18     **Her Actions Violated the Constitution**

19     Henderson is entitled to qualified immunity because there is no case law or other

20 legal authority that would put Henderson on clear notice that her (alleged) actions violated

21 Mork's constitutional rights. As detailed above, the evidence indisputably demonstrates

22 that Henderson was following NDOC policy by providing Mork's Medical Request Forms,

23 pertaining to dental care, over to the dental department for scheduling. Notably, as a CNII

24 Henderson did not play a role in scheduling inmates to see the NDOC dentist. Rather, she

25 would either mail or deliver those forms to the appropriate department. Furthermore,

26 Henderson reviewed Mork's Kites and did not handle the Kites that requested dental care.

27 Given that, there is no evidence demonstrating that Henderson would have not understood

28 what she was doing violated Mork's constitutional rights, because she was simply following

policy and delivering each kite its respective department for appropriate scheduling. *See Hope*, 536 U.S. at 739.

Accordingly, Henderson is entitled to qualified immunity because the evidence demonstrates that she was simply following NDOC policy and delivered Mork's Kites to the appropriate department for scheduling.

### 2. Dr. Naughton is Entitled to Qualified Immunity Because There is no Case Law Giving Him Clear Notice That His Actions Violated Mork's Constitutional Rights

Dr. Naughton is entitled to qualified immunity because there is no case law or other legal authority putting Dr. Naughton on clear notice that he violated Mork's constitutional rights.

For example, a plaintiff must provide evidence of a serious medical condition that exists based upon the failure to treat such condition, which "could result in further significant injury, or cause the unnecessary and wanton infliction of pain. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Further, the plaintiff must show that the official was "'deliberately indifferent,' namely, the official *knows of and disregards* an excessive risk to one's health or safety." *Id*.

As detailed above, Dr. Naughton met with Mork on numerous occasions in an attempt to treat the skin rash. While this is not an allegation that proceeded through screening, Dr. Naughton continued to try and treat Mork's rash. And when this was not completely successful, Dr. Naughton made an appointment with a specialist in order to refer Mork to for his rash. Furthermore, as detailed above, Dr. Naughton could not find a dermatologist in either the Reno or Carson City area. However, several dermatologists down in Las Vegas were available for inmate referrals. Instead of accepting the referral by Dr. Naughton, according to him, Mork refused to accept the referral and indicated that the treatment being received was working.

Given that, Dr. Naughton is entitled to qualified immunity because Dr. Naughton in fact referred Mork to a dermatologist for his skin rash down in Las Vegas, which had been done before, however, Mork refused. Simply attempting to refer Mork to a specialist would

1  not have put Naughton on notice that his actions violated Mork's constitutional rights.

2  Therefore, Dr. Naughton is entitled to qualified immunity.

3      **C.    There is no Evidence Defendant Henderson Personally Participated**
        **in Mork's Eighth Amendment Deliberate Indifference to a Serious**
4       **Medical Needs Claim**

5      A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

6  participation by the defendant." *Farmer*, 511 U.S. at 844; *see also Peralta v Dillard*, 744

7  F.3d 1076, 1084-85 (9th Cir. 2014) (en banc) (recognizing that what is reasonable depends

8  on the circumstances, including the defendant's authority, capabilities, and resources).

9  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead

10  that each Government-official defendant, through the official's own individual actions, has

11  violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

12      Here, the evidence above demonstrates that Henderson did not personally

13  participate in the underlying constitutional violations as alleged by Mork. Namely,

14  Henderson did not play a role in scheduling dental appointments for inmates during her

15  employment with the NDOC as a CNII. In fact, Henderson reviewed Mork's Medical

16  Request Forms (Kites) during this time period and any requesting dental care, she would

17  provide to the dental department for appropriate scheduling. During this time, Henderson

18  only responded to one (1) kite addressing Mork's dental care. However, that kite was

19  addressed to the medical department in order to receive stronger pain medication. And

20  generally, she did not work for the dental department and would simply turn medical kites

21  requesting dental care into a mailbox or directly to the dental department. Given that, the

22  evidence indisputably demonstrates that Henderson did not personally participate in the

23  allegation of deliberate indifference to Mork's dental issues.

24      Accordingly, Henderson did not personally participate in scheduling inmates' dental

25  appointments, nor did she participate in delaying or denying dental care for Mork.

26  ///

27  ///

28  ///

**D.    Mork Failed to Exhaust his Administrative Remedies Pursuant to the Prisoner Litigation Reform Act (PLRA)**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

///

As an initial matter, Mork filed his Civil Rights Complaint Pursuant to 42 U.S.C. §1983 (Complaint) on or around February 9, 2021. (*See* ECF Nos. 1 at 1; 8 at 1). However, it seems Mork signed and dated the Complaint on or around January 21, 2021. (*See* ECF Nos. 1 at 12; 8 at 12). In addition, these allegations arise from around September of 2019, through February 9, 2021, according to Mork's Complaint. (*See* ECF Nos. 1 at 1; 8 at 1). And Mork received a parole release date of March 24, 2021, after being granted parole on December 10, 2020. Based upon that, Mork had filed, and completed his Complaint, prior to being released on parole. While also, the allegations arise from times in which he was incarcerated at SCC. (*See* ECF Nos. 1 at 1; 8 at 1). Therefore, Mork was subject to the requirements of the PLRA pertaining to exhaustion.

Simply put, Mork failed to fully exhaust his administrative remedies pursuant to the PLRA through NDOC's grievance process. At no time did Mork file a grievance addressing any of the allegations set forth in the Complaint. Notably, the allegations began in or around September of 2019, in relation to COVID-19, however, there is not a single grievance pertaining to that issue. Moreover, there is not a single grievance pertaining to any allegations of any action of any of the Defendants.

Accordingly, Mork failed to file a single grievance during his incarceration to address the allegations contained in his Complaint. Thus, failing to comply with the requirements of the PLRA.

### E. Mork's Request for Punitive Damages Should be Dismissed for Failure to Demonstrate Evil Motive or Intent and Failure to Demonstrate Reckless or Callous Indifference to Mork's Eighth Amendment Constitutional Rights

Lastly, Mork's request for punitive damages should be dismissed because there is no evidence to demonstrate that the Defendants acted with evil motive or intent, and for a failure to demonstrate the Defendants exhibited either reckless or callous indifference to Mork's Eighth Amendment constitutional rights.

Generally, a plaintiff may claim punitive damages under 42 U.S.C §1983 when, "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

reckless or callous indifference to the federally protected rights of others. *Shafer v. City of Boulder*, 896 F.Supp.2d 915, 942 (D. Nev. 2012).

As a general matter, there is no evidence that any of the Defendants, Henderson or Naughton, acted with evil motive or intent, nor is there any evidence that these Defendants acted with wither reckless or callous indifference to Mork's Eighth Amendment constitutional rights.

For example, Henderson reviewed all of Mork's Kites pertaining to this time period and only responded to one (1) kite relating to his dental care. And that kite was addressed to the medical department because the request was for stronger pain medicine. Additionally, Henderson would send any dental kites to the dental department as soon as possible. Thus, there is no evidence demonstrating that Henderson acted with any evil motive or intent, in fact, the evidence demonstrates the opposite.

Next, there is no evidence Naughton acted with any evil motive or intent to justify an aware of punitive damages. As detailed above, Naughton met with Mork on several occasions regarding his rash. Even though the rash is not a concern of this case, Naughton scheduled an appointment for Mork to see a dermatologist in Las Vegas, however, Mork refused to go. In addition, Naughton did not threaten Mork, but rather, recommended that he be sent to a dermatologist in Las Vegas so he could see a dermatologist. Thus, there is no evidence Naughton acted with evil motive or intent, rather, Naughton continued to try and treat Mork's rash, including scheduling a dermatologist visit in Las Vegas. Notably, Mork indicated to Naughton at that time, the treatment seemed to be working and that his symptoms were going away.

Accordingly, Mork's request for punitive damages in his Complaint should be dismissed because the evidence demonstrates these Defendants, not only did not violate Mork's constitutional rights, but did not act with any evil motive or intent justifying an award of punitive damages.

///

///

# VI.    CONCLUSION

Defendants assert Mork will not be able to provide sufficient evidence to prove to a reasonable jury that Defendants were deliberately indifferent to Mork's constitutional rights under the Eighth Amendment, or that he fully exhausted his available administrative remedies under the PLRA.

DATED this 10th day of June, 2025.

AARON D. FORD
Attorney General

By:    /s/ Douglas R. Rands
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General

/s/ Mark Hackmann
MARK HACKMANN, Bar No. 16704
Deputy Attorney General

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on June 10, 2025, I electronically filed the foregoing, **DEFENDANTS' TRIAL BRIEF** via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by depositing a copy for mailing, addressed to the following:

Adam J. Breeden, Esq.
Breeden & Associates, PLLC
7432 W. Sahara Ave., Suite 101
Las Vegas, NV 89117
adam@breedenandassociates.com

Anna Holland Edwards, Esq.
Colo. Bar No. 35811
HOLLAND, HOLLAND EDWARDS &
GROSSMAN, LLC
1437 High Street
Denver, Colorado 80218
anna@hheglaw.com

_/s/ Tammy Steele_____
An employee of the
Office of the Attorney General