AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
MARK HACKMANN, Bar No. 16704
  Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1150
E-mails:  drands@ag.nv.gov
             mhackmann@ag.nv.gov
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NICOLAI MORK,<br><br>                    Plaintiff,<br><br>vs.<br><br>PERRY RUSSELL, et al.,<br><br>                    Defendants. | Case No.  3:21-cv-00077-MMD-CSD<br><br>**DEFENDANTS' RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, ALTERNATIVE RULE 59 MOTION FOR NEW TRIAL, AND ALTERNATIVE REQUEST FOR REMITTITUR** |

Defendants, Kathleen Henderson and Dr. Martin Naughton, by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, Senior Deputy Attorney General, Douglas R. Rands, and Deputy Attorney General, Mark Hackmann hereby submit their renewed motion for judgment as a matter of law. In the alternative, Defendants request a new trial or remittitur.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Nicolai Mork (Mork) proceeded to trial on two claims for events that happened while housed at Stewart Conservation Camp (SCC): an Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Dr. Naughton (Naughton) regarding treatment of a rash and an Eighth Amendment deliberate indifference to medical needs claim against Defendant Nurse Henderson (Henderson) regarding dental treatment. ECF No. 8.

On June 20, 2025, the jury, after a 3-day trial, found in favor of Mork on both counts. ECF No. 131 at 1:14-24. The jury awarded a total of $4,347,750 in compensatory damages, determining that Defendant Naughton was liable for $540,000, and Defendant Henderson liable in the amount of $3,807,750. *Id.* at 2:3-

18. On June 23, 2025, this Court entered judgment consistent with this verdict. ECF No. 133.

The jury's verdict is clearly erroneous and must be reversed for at least the following six reasons: (1) Mork failed to establish a claim of deliberate indifference; (2) Defendant Henderson lacked personal participation regarding the dental issue; (3) Mork failed to exhaust administrative remedies pursuant to the PLRA; (4) Defendants are entitled to Qualified Immunity based on the absence of relevant clearly established federal law; (5) the curative jury instruction given regarding indemnification was improper and unduly prejudicial; and (6) the spoliation instruction requiring the jury to consider the demonstrative exhibits as introduced exhibits establishing the severity of the rash was unduly prejudicial. This Court should also reconsider its denial of Defendant's Rule 50(a) motion because Defendants are entitled to qualified immunity and therefore entitled to judgment as a matter of law under Rule 50(b) notwithstanding the jury's verdict in favor of Mork. For these reasons, Defendants respectfully request this Court enter judgment in their favor under Rule 50(b). Alternatively, as a result of the above evidentiary and legal errors, Defendants request a new trial under Rule 59.

Finally, even if this Court were to conclude that the evidentiary or legal errors did not constitute undue prejudice leading to this improper jury verdict, given the evidence presented at trial, the jury verdict on liability generally, and on the amount of compensatory damages, specifically, is against the great weight of the evidence, and the damages award shocks the conscience. Accordingly, even assuming this Court does not believe the multiple evidentiary and legal errors did not constitute undue prejudice requiring judgment as a matter of law to be entered in favor of Defendants, this Court must award either a new trial, or, alternatively, at least remit the compensatory damages award as the award shocks the conscience.

## II.    ARGUMENT

### A.    Rule 50(b) Renewed Motion for Judgment as a Matter of Law

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Equal Emp't Opportunity Comm'n v. Go Daddy Software, Inc.,* 581 F.3d 951, 961 (9th Cir. 2009). When considering a Rule 50(b) motion that reasserts arguments presented in a Rule 50(a) motion, a court must uphold the jury's verdict if "substantial evidence" supports the jury's conclusion. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016).

Substantial evidence means "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same evidence. *Id*. (quotations omitted).

### 1.    Mork Failed to Support His Claim for Medical Indifference

Prison officials have a duty to provide medical care for inmates, and the denial of medical care may result in pain and suffering constituting cruel and unusual punishment in violation of the Eighth Amendment of the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials can be deliberately indifferent to serious medical needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104. To establish a constitutional violation, an inmate must satisfy a two-part test: (1) that he has a "serious medical need" and "failure to treat [his] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain';" and (2) the defendants' response to the medical need was deliberately indifferent." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006). To establish deliberate indifference, an inmate must show the following: (1) the defendants purposefully acted or failed to respond to the inmate's possible medical need; and (2) the indifference caused harm. *Id.* Notably, the officials' conduct must demonstrate "unnecessary and wanton infliction of pain" before it violates the Eighth Amendment. *Estelle*, 429 U.S. at 104.   Deliberate indifference is a high legal standard; a medical professional's mistake, negligence, or malpractice is not sufficient to constitute deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1060. An inmate alleging deliberate indifference to serious medical need "must allege acts or omissions sufficiently harmful" to the inmate. *Id.* at 106. Medical malpractice or negligence does not qualify as a constitutional violation. *Id.* A prisoner's difference of opinion with prison medical personnel, regarding a course of treatment, is not sufficient to establish a claim of deliberate indifference to serious medical need. *Toguchi*, 391 F.3d at 1057-1058.   A prison official acts with "deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth

Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin*, 974 F.2d at 1059 (alteration and citation omitted).

The subjective element is satisfied where prison officials "deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988). "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (1994). Inadequate treatment due to medical malpractice, negligence, or even gross negligence, does not rise to the level of a constitutional violation. *See Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting *Estelle*, 429 U.S. at 105-06); *Toguchi*, 391 F.3d at 1060. There is no constitutional violation unless the delay caused harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985).

> ### a.    Dr. Naughton Did not Deny, Delay, or Interfere with Medical Treatment Relating to Mork's Rash

At no time in this case was any evidence introduced that even suggests – let alone establishes – Dr. Naughton knew of the "subjective danger" associated with Mork's rash. While it is undisputed that the symptoms of the rash, itching and less-than-pleasing aesthetics, are undoubtedly uncomfortable, no evidence was presented that the rash or symptoms in and of themselves were an objectively serious medical condition or that the rash and symptoms posed an "excessive risk to health and safety" from a medical standpoint. Nor did Mork make known to Dr. Naughton that there were any risks to his safety because of the duration of Dr. Naughton's treatment plan in curing the rash. Indeed, both Mork and Dr. Naughton testified rather similarly on this point.

Understandably, Mork was not pleased that the rash would not go away, or that the photographs of the rash were not sent to an outside provider, but he undisputedly testified that Dr. Naughton met with him numerous times to discuss the rash, prescribed different medications and treatments, and made various and different recommendations—including some that were requested by Mork. ECF No. 137 at *385:19-390:21, *at 189:19-209:4.    Similarly, Dr. Naughton remained consistent in his medical diagnosis of contact dermatitis, but he also testified that he tried several different treatment options with regard to the rash, made

several different recommendations, and even attempted to locate a dermatologist in Southern Nevada that may see Mork for treatment, as those in Northern Nevada would not see offenders during this time due to COVID-19 – a treatment option Mork testified he would not wish to partake in given his stated "fear" of being housed at High Desert State Prison (HDSP). ECF No. 136 at 153-180; ECF No. 137 at 189-211; ECF No. 137 at 353-355. And Mork produced no evidence to show that Dr. Naughton's choices about how to treat Mork's constituted deliberate indifference.

What's more, Mork testified the rash started to immediately get better upon his departure from SCC, and that he never required any treatment for the rash after leaving SCC. ECF No. 137 at 401:4-24 As noted in *Williams v. Kohler*, when a prison doctor "[is] convinced that [the] diagnosis [is] correct," there is no deliberate indifference even if the doctor negligently fails to pursue other diagnostic avenues so long as there is no evidence that the doctor "was subjectively aware that [the] failure to conduct a differential diagnosis created a 'substantial risk of serious harm.'" 717 F. App'x 734, 735 (9th Cir. 2018). (quoting *Toguchi*, 391 F.3d at 1060 (9th Cir. 2004)) (quoting *Farmer*, 511 at 825, 837). In other words, the transfer confirmed Dr. Naughton's medical diagnosis of contact dermatitis, and Mork provided no evidence or even a difference of opinion or negligence on the part of Dr. Naughton – let alone any evidence of potential deliberate indifference. ECF No. 137 at 401:3-24. To be clear, neither the fact that Dr. Naughton was unable to discover the source of the contact dermatitis nor find a remedy that successfully treated the rash (regardless of the cause) establish even negligence, let alone deliberate indifference.  This is particularly true when Mork provided "no expert testimony, no doctor's report, or contrary medical opinion" that calls into question Dr. Naughton's diagnosis or treatment plan for the rash.  *See Fahr v. Johnson*, 2025 WL 1681495, *2 (9th Cir. June 16, 2025) (Bumatay, J., dissenting). Simply put, no evidence put forth in this case establishes that Dr. Naughton "disregard[ed] an excessive risk to [Mork's] health and safety." *Farmer*, 511 U.S. at 837.  Instead, all evidence establishes that Dr. Naughton knew of the rash, and that he undertook several different approaches in attempting to treat the rash, which eventually cured up on its own after leaving SCC. ECF No. 137 at *221-235, *401:4-24

For those reasons, this Court erred in permitting this claim to go to the jury and for the jury to conclude that the evidence establishes deliberate indifference. This is particularly true when Mork produced absolutely no evidence to show that Dr. Naughton's decision to pursue certain diagnostic avenues, when

others—none of which were presented into evidence or shown to be more appropriate—might also have been available, would rise to the level of deliberate indifference. In other words, there is no evidence that Dr. Naughton's diagnosis was incorrect or that Dr. Naughton was not attempting to treat and cure the rash, that the rash was a serious medical need, or that left unsuccessfully treated (or even untreated) was for the sole purpose of pain or discomfort as required to find deliberate indifference.  punishment." *Williams*, 717 F. App'x 734, 735 (9th Cir. 2018); *Farmer*, 511 U.S. at 838.

Mork failed to present evidence proving either the objective or subjective prongs of deliberate indifference. Instead, all the evidence at trial establishes that Dr. Naughton was treating Mork's rash as he determined was the best course of action based on his years of experience treating similar ailments in the same institution. And he didn't simply repeat the same things without regard for the lack of success.  He tried other avenues of treatment when initial treatments did not succeed.  And again, as noted above, Dr. Naughton's diagnosis of contact dermatitis caused by an environmental factor at SCC was eventually proven to be correct as Mork provided testimony that his rash started to get better after he left SCC and made his way to Southern Desert Correctional Center (SDCC) in preparation for release on parole. He also testified that after he was released from custody his rash healed completely, and he did not even need to seek treatment for it. Additionally, Mork testified that he was terrified of High Desert State Prison (HDSP) and refused to go there even if it meant seeing a dermatologist, which he claimed was the correct course treatment. ECF No. 137 at 353-355; ECF No. 137 at 403:3-23.

Accordingly, this Court erred when it stated that continuing a course of treatment without successfully remediating the ailment amounts to deliberate indifference when it is clearly established that inadequate treatment, even malpractice, negligence, and gross negligence do not rise to the level of a constitutional violation. ECF No. 138 at 506:10-25.

### b.    Nurse Henderson Could Neither Provide or Ensure Dental Care

No evidence was presented that Nurse Henderson delayed or refused to triage the kites that Mork submitted regarding his dental issues.  Indeed, the parties stipulated to the exact opposite, as the jury was informed that Nurse Henderson "received and reviewed Mr. Mork's dental kites . . . and Dental's responses to the same kites." ECF No. 119 at 2, ¶ 10.  In addition to these stipulated facts provided to the jury, Nurse Henderson testified she never saw any physical symptoms of his dental problems when she saw him. ECF

137 at 312:7-316:6. As a result – even if this Court or the jury believes it was negligent or grossly negligent for her not to inspect his mouth (which Mork never testified he asked her to do and no kites indicate he sought such an inspection), without that inspection, there is zero evidence of her being aware of a "subjective danger" associated with Mork's dental needs, which had they manifested to a medical need, would have allowed Nurse Henderson to arrange for *medical intervention* as opposed to dental intervention, which she had no control over. Thus, Nurse Henderson had no knowledge of any subjective danger when she processed and routed dental kites to the dental department per her job duties and consistent with NDOC policy. *Id*; Ex. B – AR 613. Indeed, the evidence presented undisputedly establishes that every kite Mork submitted was in fact routed to the dental department and the subsequent responses from dental were routed back to Mork. ECF No. 137 at 385-397; *see also* ECF No. 119 at 2, ¶ 10.

Although Nurse Henderson had an employment responsibility to have knowledge of and comply with Medical Directive (MD) 408, she had neither the ability nor the responsibility to schedule and/or treat Mork's dental issues. ECF No. 137 at 279-282. This policy clearly states that dental care is provided by a licensed dentist, and dental services are scheduled by the Director of Nursing Services (DONS)/designee in conjunction with the dentist. *Id*. And it is undisputed this was not Nurse Henderson's job, job duty, or job responsibility, meaning she could not schedule such services. *Id*. Thus, for Mork to prove deliberate indifference to his dental needs he needed to prove that Nurse Henderson refused to route, or delayed routing, the kites to the dental department which the evidence clearly shows she never delayed or refused to do. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978)). But the evidence, including a stipulated fact on this point, ECF No. 119 at 2, ¶ 10, undisputedly establishes she processed the kites properly every single time, proving that she acted with deliberate care towards his dental needs making a finding of deliberate indifference factually and legally impossible. And no evidence Mork presented changed this undeniable truth. *See* ECF No. 137 at 260:13-326:14

Further, in denying the Rule 50(a) motion, this Court stated that a delay in care could amount to deliberate indifference because "there is evidence of Mr. Mork complaining about pain for over a year, and he should have been referred to a dentist for treatment, and he wasn't referred." ECF No. 138 at 507:36. Respectfully, this misstates the undisputed facts in the record. The evidence shows that every time Mork filed a kite to be seen by dental, Nurse Henderson routed the kite to the dental department and routed the

response back to Mork. ECF No. 137 at *263:18-287:18, *290:22-295; *see also* ECF No. 119 at 2, ¶ 10; Joint Ex. 14,36. The dental department's failure to schedule the appointment and provide dental care to Mork is not the fault of Nurse Henderson. Mork's failure to sue the right person or entity in that regard does not make Nurse Henderson liable as a scapegoat. Thus, respectfully, this Court erred when it stated that Mork was not referred to dental – as the evidence undisputely establishes, he was – each and every time a dental kite was submitted to Nurse Henderson seeking a dental appointment.

### 2.    Nurse Henderson Lacked Personal Participation

In a section 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A person deprives another of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes [a constitutional] deprivation." *Leer*, 844 F.2d at 633. The causation inquiry must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the alleged constitutional deprivation. *Id*.

Here, Nurse Henderson was responsible for receiving the kites and distributing them to the dental department. She did this. Mork does not dispute that. It is also undisputed that she had no personal responsibility for or participation in the scheduling, provision of, or providing dental services; it is the responsibility of the dentist and dental department, as the record has shown. ECF 137 at 279-282. *See* Joint Ex. 10 at 1. No evidence was presented that showed Nurse Henderson failed to deliver, or delayed delivery of, a kite to the dental department. ECF No. 137 at *263:18-287:18, *290:22-295. For these reasons, Nurse Henderson is entitled to judgment based on a lack of personal participation.

In denying the Rule 50(a) motion, this Court erred by placing the responsibility of scheduling a dental appointment on Nurse Henderson and by allowing the jury to determine that issue. In addition, this Court erred by relying on the incorrect legal standard that Henderson could do more to help Mork get an appointment but did not. The factual and legal question is not whether Nurse Henderson could "do more" either hypothetically, or in reality. The standard is whether her actions or inactions establish personal participation based on acts that she is legally required to perform but did not. *Leer*, 844 F.2d at 633.

And indeed, here, Nurse Henderson did what she could do, which was to ensure that the dental kites

were received and provided to dental, and that any response from dental was provided to Mork.  In other words, Mork's theory of liability as to Nurse Henderson is substantially similar to when a plaintiff attempts to hold a nurse or individual liable for denying grievances.  In those instances, case law is clear that "merely denying grievances is not enough to establish a constitutional claim." *Hines v. Faulkner*, No. 2:19-cv-01203-GMN-EJY, 2023 WL 2588347, * 6 (D. Nev. March 10, 2023), *app pending* (citing *May v. Williams*, No. 2:10-cv-00576, 2012 WL 1155390, at * 3-4 (D. Nev. Apr. 4, 2012).  Or, as noted by the Western District of Washington, there is no personal participation against nurses even when they "reviewed and *denied* the plaintiff's grievances . . . because they did not have decision-making authority over the plaintiff's care." *Hines*, *supra* (citing *Stewart v. Warner*, No. 15-cv-5243, 2016 WL 1104893, at * 5 (W.D. Wash. Fed. 29, 2016), *report and recommendation adopted*, No. 15-cv-5243, 2016 WL 1089974 (W.D. Wash. Mar. 21, 2016).  Based on this clear legal doctrine, this Court, in *Hines* this Court granted summary judgment to an NDOC nurse who had denied a grievance based on dental care, because as this Court correctly noted there, that the nurse's "lack of personal participation is evidenced by the fact that he had no decision-making authority or ability to resolve the underlying issue grieved by" the offender because the nurse was "neither a licensed physician nor certified dentist, and lacked the authority to 'direct any NDOC medical staff members or outside providers regarding *any dental procedures or treatments [Plaintiff] required*." *Hines*, *supra* at * 6 (emphasis added).  To be sure, here, Nurse Henderson did not respond to grievances (which Mork *never filed*) but instead reviewed and responded to dental kites by ensuring they were provided to the decision-maker regarding dental care and scheduling. ECF No. 137 at 259:2-285:10. And in responding to those kites, she never denied Mork anything – but rather fulfilled her obligations to ensure the decisionmakers were aware of Mork's dental care requests.  Here, Nurse Henderson was not legally required to do anything more than provide the dental kites to the dental department, e.g., the decision makers, for proper processing. Finding her personally participating in the delay of care is factually impossible and legally erroneous. And again, allowing her to be a scapegoat for Mork's failure to sue a dentist, dental assistant, or anyone else associated with providing him dental care, is improper and clear error.

### 3.     Failure to Exhaust Administrative Remedies Pursuant to the PLRA

#### a.     Mork failed to exhaust his administrative remedies

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Here, Mork testified he never filed a grievance while in custody. Because of that, the burden shifts to Mork to show that something made the existing and generally available administrative remedies unavailable to him. Warden Breitenbach testified that every offender receives education on the grievance process at intake. ECF No. 136 at 67:7-23. Mork knew of his available remedies and declined to use them; therefore he failed to exhaust his remedies pursuant to the PLRA. It is important to note that Mork never filed a grievance for the treatment of his rash or his dental needs.  Nor did he ever file a grievance indicating he was precluded from filing grievances on these issues. Nor at any time in this matter did he include allegations of violation of his First Amendment rights regarding denial of the grievance process.

In the aggregate, these facts weigh towards showing that Mork chose to not use administrative remedies available to him and required to be used before filing this lawsuit.

### b.    The finding of waiver by this Court was erroneous

Defendants respect and appreciate this Court's previous ruling on this issue. However, in an abundance of caution, Defendants raise facts and arguments associated with this ruling for the purpose of ensuring that the issue is properly preserved for appellate review.

This Court found that Defendants waived all affirmative defenses except for qualified immunity. ECF No. 136 at 120:8-11. The basis for the ruling was that in the Joint Pretrial Order (JPTO) (ECF No. 102) Mork desired striking Defendants' affirmative defenses as Mork saw them as nonviable or not applicable. *Id*. at 118:21 – 119:12. And then in the Amended JPTO (ECF No. 106 at 2:27 – 3:5) Defendants' counsel approved Plaintiff's counsel's draft of the document while mistakenly failing to point out that Defendants wished to retain the affirmative defense of failure to exhaust administrative remedies under the PLRA. ECF No. 136 at 118:17 – 119:22. The Amended JPTO also contains an ambiguity in that the next paragraph notes that Defendants maintain the ability to rely on all affirmative defenses contained in their Answer. ECF No. 106 at 3. Only looking at these two documents as the basis for the finding of waiver is erroneous.

Th Ninth Circuit has consistently found that waiver occurs "when a party intentionally relinquishes a right, or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Albers v. Paul Revere Ins. Grp.*, No. 22-15100, 2023 WL 3862514, at *2 (9th Cir. June 7, 2023) quoting *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991) (citing *Rheem Mfg. Co. v. United States*, 371 P.2d 578, 581 (Cal. 1962)). "The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver." *Albers*, No. 22-15100, 2023 WL 3862514, at *2 (9th Cir. June 7, 2023) (quoting *Waller v. Truck Ins. Exch.*, Inc., 900 P.2d 619, 636 (Cal. 1995)) (cleaned up).

Here, the Court must look at all the actions by Defendants and determine that their acts are so consistent with waiver that they must induce a reasonable belief that waiver has occurred. Defendants asserted failure to exhaust as required by the PLRA as their 13th affirmative defense in their answer to the complaint. ECF No. 28 at 4. They, again, asserted this affirmative defense in their Motion for Summary

Judgment ECF No. 63 at 21. Indeed, as the Summary Judgment motion was, respectfully, improperly denied, the exhaustion defense as raised in that motion has not been waived. *Cf. Dupree v. Younger*, 598 U.S. 729 (2023) (holding that pure questions of law raised by motion for summary judgment need not be renewed by post-judgment motion to be preserved for appeal).

This defense was also included in the Proposed Joint Pretrial Order. ECF No. 101 at 4. Additionally included in that document was Plaintiff's Grievance History (Def. Ex. 117) being listed as a Stipulated Exhibit as to Authenticity and Admissibility and Defendants' Exhibits Subject to Objections #3 Plaintiff's Grievance file, including all relevant grievances. ECF 101 at 8. The same are listed in the Joint Pretrial Order issued by this Court. ECF 102.

Later, the proposed Amended Joint Pretrial Order states that "Defendants voluntarily withdraw the…Thirteenth…Affirmative Defense[s]." ECF No.105 at 3. It does not state that it withdraws the exhaustion defense by name. Additionally, 2 paragraphs later, it states "Defendant incorporates any Affirmative Defenses from the Answer as it pertains to the Defendant." *Id*. Included in that document as well was Mork's Grievance History (Def. Ex. 117) being listed again as a Stipulated Exhibit as to Authenticity and Admissibility and Defendants' Exhibits Subject to Objections #3 Plaintiff's Grievance file, including all relevant grievances. ECF 105 at 7. The same was repeated in the Amended Joint Pretrial Order issued by this Court. ECF No. 106.  Both the JPTO and Amended JPTO were drafted by Mork's counsel and approved by Defendants' counsel, mistakenly failing to point out that the defense is not waived. Defendants also include the exhaustion defense in their trial brief. ECF No. 118. Defendants' counsel first learned of the discrepancy on June 13, via email when discussing the proposed stipulated facts instruction. ECF No. 136 at 113:9-20. On June 12, defense counsel sent a red-lined copy of the stipulated fact instructions to Plaintiff's counsel, adding the fact Mork never filed a grievance while in custody. On June 13, Plaintiff's counsel replied stating that they can't agree to renew a waived PLRA defense, to which Defense Counsel responded that they never intended to waive the defense, which prompted the hearing on waiver. ECF No. 136 at 113:9-20.

Defendants' actions clearly established their position that they never intentionally waived the affirmative defense of failure to exhaust. Also, Mork's counsel drafted the amended JPTO and any ambiguity should be viewed against the drafting party. Additionally, Mork's contentions that they understood

Defendants' actions to indicate they had waived the defense does meet the burden of the standard to prove waiver "by clear and convincing evidence that does not leave the matter to speculation." Therefore, because the Defendants' actions are clearly inconsistent with an intentional waiver, this Court erred in concluding that on this record, when it ruled that this defense was waived.

### 4. Because There Is No Clearly Established Law Putting Defendants On Notice That Their Actions Violated the Constitution, They Are Entitled to Qualified Immunity and Therefore Judgment As a Matter of Law Under Rule 50(b)

The defense of qualified immunity protects state officials sued in their individual capacities from damages unless the conduct complained of violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). Therefore, regardless of whether a constitutional violation occurred, state officers prevail if the right asserted by the plaintiff was not "clearly established" or if the state officers could have reasonably believed their conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Mork bears the burden of proving that a right allegedly violated was clearly established at the time of the alleged misconduct. *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). Even if the government official is mistaken, so long as the mistake is reasonable, qualified immunity shields the official from any liability. *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991). In other words, qualified immunity is available to "all but the plainly incompetent or those who knowingly violate the law." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (citations omitted); *see also Stanton v. Sims*, 571 U.S. 3, 134 S. Ct. 3, 5 (2013) (per curium).

When conducting the qualified immunity analysis, district courts "ask (1) whether the official violated a constitutional right, and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240-42. Whether the right is established is an objective inquiry, and it turns on whether a reasonable official in the defendant's position should have known at the time that his conduct was constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cnty*, 693 F.3d 896, 915 (9th Cir. 2012). Although the second inquiry is highly deferential, and it is not necessary that the precise action has previously been held unlawful for a right to be "clearly established," *Anderson*,

483 U.S. at 640, this Court must assess whether Defendants are entitled to qualified immunity "in light of the specific context of [this] case." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)). To be clearly established, there must be more than broad levels of legal generalities, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citation omitted); *see also S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *White*, 137 S. Ct. at 551), instead there must be cases that, given the "particularized facts" of the case before the court, make clear the government official knew the law was clearly established. *Id.*

Here, Defendants respectfully argue that as a matter of law they did not violate Mork's constitutional rights, let alone a constitutional right that was clearly established.

### a. Defendants Naughton and Henderson did not commit any Constitutional violation

As discussed *supra* at 3:3 – 7:25, Mork did not present sufficient evidence to meet his burden to prove that the actions or inaction of either Dr. Naughton or Nurse Henderson amount to a violation of the Eighth Amendment for medical deliberate indifference violations. This is particularly true when viewing this issue through the lens of qualified immunity, which requires that each defendant was on "clear notice" that their actions violated the Eighth Amendment.

### b. Defendants were not on clear notice that their actions violated Mork's Eighth Amendment Constitutional rights

It is not sufficient for the district court to conclude that the plaintiff has proven a constitutional injury, or that there are material facts in dispute that, if proven, would establish a constitutional violation. *Carley v. Aranas*, 23-15271, 2024 WL 2808823, at \*5 (9th Cir. June 3, 2024). The court must proceed to the second step to decide whether the violation was "clearly established at the time of the violation." *Id.* (citing *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (internal quotation marks and citation omitted)). In other words, "[f]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, (2015) (per curiam)). The "constitutional question [must have been] beyond debate." *Id.* (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (citation omitted); *see Anderson v*, 483 U.S. at 640

(holding that "in the light of pre-existing law the unlawfulness [of the challenged action] must be apparent" (citation omitted)); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

The Ninth Circuit has held that for a right to be clearly established, "the relevant right must have been defined more narrowly" than the general rule from *Farmer* that states that "prison officials cannot deliberately disregard a substantial risk of serious harm to an inmate." *Id.* (citing *Hampton v. California*, 83 F.4th 754, 769 (9th Cir. 2023)) (internal quotations omitted). The Supreme Court "has repeatedly told courts —and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018) (per curiam); *see also Hamby*, 821 F.3d at 1090 ("[O]ur circuit has been repeatedly chastised for conducting the clearly established inquiry at too high a level of generality." (internal quotations omitted).

Here, there was no evidence at trial, nor case law, that was presented that those actions undertaken by Dr. Naughton, while providing medical care to Mork, were insufficient. Also, when denying the Rule 50(a) motion regarding qualified immunity for Dr. Naughton, this Court stated that Defendant's assertion that there is not a clearly established right to have an ailment, such as a rash, treated within a specific time frame is defining the right too narrowly and the clearly established right is to simply have the rash treated. ECF No. 138 at 509:2-8. This is directly contrarian to the case law and direction of the Supreme Court not to define clearly established rights at too high of a level of generality. Consequently, if the clearly established right was just to have treatment of the rash, then there could not factually be any violation as Defendant Naughton extensively treated Mork's rash over the months and years as supported by the evidence presented by Mork. If the lack of cure within a specific time frame is to be considered a "delay in treatment," there is also not a violation as case law clearly supports that differing opinions in treatment and lack of differential diagnosis and varied treatment do not amount to a violation.

This Court also denied qualified immunity during the Rule 50(a) hearing because Defendant Henderson was found to be involved in the inmate's dental care via processing Mork's kites to obtain a dental appointment. There is no clearly established law that a nurse in the medical department must go above and beyond her duties to ensure that a dental patient is seen by the dental department.

Additionally, it is factually and legally impossible for Henderson to schedule a dental appointment, provide dental services, or command that the dental department and/or dentist perform these duties as she lacks the ability and authority to do so.  Accordingly, Dr. Naughton and Nurse Henderson are entitled to judgment as a matter of law either as to the merits of each Eighth Amendment claim, or under the doctrine of qualified immunity because they have established as a matter of law that Mork did not satisfy either prong of the two-pronged analysis.

### 5.    Erroneous Jury instructions Unduly Prejudiced Defendants

A prejudicial jury instruction is a basis for a new trial. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1337 (9th Cir. 1985).  "In assessing jury instructions, consideration must be given to the charge as a whole to determine whether it is misleading or incorrectly states the law to the prejudice of the objecting party." *Coursen*, 764 F.2d at 1337.  Here, the Court erroneously instructed the jury, to the prejudice of Defendants, that the State of Nevada is obligated to represent the Defendants and they should not speculate or consider whether the State of Nevada or the individual defendants would be required to pay award money damages.

### a.    The curative indemnification instruction was erroneous

In addressing the Eleventh Amendment problems, five questions must be answered: (1) is the plaintiff one to whom the amendment applies; (2) is the state the real party in interest; (3) is the relief sought barred by the amendment; (4) has the state waived its sovereign immunity; and, if not, (5) is there a congressional statute overriding the state's immunity? *Bair v. Krug*, 853 F.2d 672, 674 (9th Cir. 1988) (citing 1 J. Nowak, R. Rotunda & J. Young, Treatise on Constitutional Law: Substance and Procedure, § 2.12(b) at 85 (1986) ("Constitutional Law")). With respect to the fourth question, there is nothing in the record to indicate that the State of Nevada has waived its sovereign immunity in such actions. To the contrary, Nevada has expressly reserved its Eleventh Amendment immunity." *Bair*, 853 F.2d at 674 (citing Nev. Rev. Stat. § 41.031(3); *See also* Nev. Rev. Stat. § 41.032 (extending immunity generally to state officers)).

Where state law deems state governmental entities indispensable parties in a state law claim against a state employee, the federal court has no jurisdiction over the state law claim because the court has no jurisdiction over the indispensable party. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir.

1982); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 124 (1984) (holding that "federal courts lack jurisdiction" over a "claim that state officials violated state law in carrying out their official responsibilities" because it "is a claim against the State that is protected by the Eleventh Amendment" and it "is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

The Ninth Circuit has made clear that "the state need not be a named party to [an] action; the Amendment bars a suit against state officials when '*the state is the real, substantial party in interest.*' ... [T]he Eleventh Amendment bars a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Bair*, 853 F.2d at 675 (internal citations omitted; emphasis added). Thus, even when not a named party, a state will be deemed the real party in interest where, e.g., "the judgment sought would expend itself on the public treasury or domain or interfere with the public administration...." *Bair*, 853 F.2d at 675 (citing *Demery v. Kupperman,* 735 F.2d 1139, 1146 (9th Cir.1984) (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S. Ct. 999, 1006, 10 L.Ed.2d 15 (1963)), *cert. denied,* 469 U.S. 1127 (1985)).

The curative jury instruction was erroneous because it violated the spirit of the Eleventh Amendment by making the State of Nevada an unnamed party in interest via implications of indemnification and required representation of the Defendants.

During Defendants' closing argument, counsel referred to the interest in the outcome as an explanation that goes to bias of testimony regarding the differences in testimony about the events in question. ECF No. 138 at 570:3-16. A point was made that the Defendants no longer work for the NDOC and there would be no motivation for them to be biased in their testimony to avoid negative consequences as an employee that violated an offender's rights and cost a high-dollar verdict for their employer. There was no insinuation that they would have to pay it out of their own resources, as the Court used as its basis for giving the curative instruction. *Id*. at 574:5-15.

The curative instruction made the State an unnamed party in interest by instructing the jury that the State was required to represent the Defendants. Even though the instruction directed the jury not to speculate or consider whether the individual or the State will be required to pay any award money damages, the clear, logical, rational conclusion from the Court telling the jury to take a break and then

bringing them back to give this instruction is an inference that the State could be the party paying any monetary award. In short, while the curative instruction does not directly violate the Eleventh Amendment, by making the State of Nevada an unnamed party in interest by virtue of causing the jury to consider that the State may be paying the award and that payment would be made using public funds, the curative instruction violates the spirit of the Eleventh Amendment prevents federal courts from imposing liability on State, especially when the state is not a named party thereby having no representation. Therefore, the curative instruction was erroneous, and the Defendants should be awarded a new trial.

Similarly, the curative instruction is erroneous because it violates the principles set forth in the collateral source rule. *Maharaj v. California Bank & Tr.*, 288 F.R.D. 458, 461 (E.D. Cal. 2013); citing *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir.1994); accord *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1134 (9th Cir.2003). *See Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 930 (5th Cir.1992) (stating "if the substantive law disallows a setoff from the tortfeasor's damages for the plaintiff's collateral benefits, evidence of collateral benefits simply has no relevance in the lawsuit"). 288 F.R.D. at 461.

In the instant matter, the State of Nevada is the "insurance" company with its astronomically larger pool of resources than those of the Defendants and legal obligation to indemnify former employees in suits such as this. The principle of the collateral source rule is to prevent damage awards from being adjusted based on the resources of the payor. Here, the same principle would apply, just in the inverse. The jury, based on the suggestion that the State of Nevada may be paying the damages award, increased their award amount to a conscience-shocking amount because of a collateral source of payment with greater resources than the name Defendants.

### b. The erroneous curative indemnification instruction prejudiced Defendants

In short, there was no evidence of damages presented to support the calculations given by counsel or to support the jury award.  The conscience-shocking number returned by the jury of $4,887,750 demonstrates that the jury was inflamed by passion and prejudice and was likely confused and misled by improper jury instructions. The jury likely (improperly) viewed the curative instruction as a signal that the State of Nevada would be paying the judgment and they could inflate the award amount. *See supra*.

Additionally, similarly to the violation of the spirit of the Eleventh Amendment and collateral source rule as discussed above, the indemnification instruction prejudiced Defendants by stripping them of a critical element related to personal participation that was raised during Defense counsel's closing argument. The "empty chair" argument summarized that the proper party that should have been a named Defendant regarding Mork's dental issues was the dentist, dental department, or anyone who was responsible for scheduling and providing dental care. But Mork chose not to sue the correct party. And the result of the curative instruction alluding to the jury that the State of Nevada has a mandatory role in the Defendants' case allowed them to fill that chair and hold the State accountable even though they are not a real party to the matter.

**B.    Standard for New Trial Under Rule 59[1]**

Under Rule 59 of the Federal Rules of Civil Procedure, a court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 50(a)(1)(A). Although "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," the court may grant a new trial on "those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)).

When considering the weight of the evidence prong, courts have a "duty 'to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Id.* (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)). In other words, a court can and should grant a new trial whenever it concludes that the evidence presented at trial logically and plausibly infers that a new trial is appropriate.

---

[1] Defendants' Motion for New Trial is made in the alternative to their Rule 50(b) Renewed Motion for Judgment as a Matter of Law. Specifically, to the extent the Court does not overturn the jury verdict and dismiss Plaintiff's case in full on statute of limitations grounds, these arguments for a new trial apply.

When considering a motion for new trial based on the insufficiency of evidence supporting a jury verdict, the court "may grant a new trial only if the jury's verdict was against the clear weight of the evidence." *Molski*, 481 F.3d at 729. This determination is a case-specific endeavor for which there is no easily articulated formula. *Id.* However, the Court should grant the motion for new trial "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48–49).

Unlike at the summary judgment stage or in considering Rule 50 motions, when deciding the issue of whether a new trial is warranted, this Court is not required to view the evidence in the light most favorable to Mork. Instead, this Court is to "weigh the evidence and assess the credibility of witnesses" in order to make its own decision as to whether a new trial is "necessary to prevent a miscarriage of justice." *Landes Constr. Co.*, 833 F.2d at 1371; *Experience Hendrix*, 762 F.3d at 842 (citing *Murphy*, 942 F.2d at 187).

### 1. A New Trial Is Warranted Because the Jury Verdict is Against the Weight of the Evidence

In addition to be entitled to qualified immunity, Defendants are entitled to judgment as a matter of law because the jury's verdict is not supported by substantial evidence. In this respect, Defendants incorporate by reference arguments made *supra* at 3:3 – 7:25 & 13:5 – 16:6 (discussing the lack of evidence that defendants committed any constitutional violation). Indeed, the evidence before the Court points to the undeniable conclusion that no reasonable jury could find, based on the evidence, that either Dr. Naughton or Nurse Henderson violated the Eighth Amendment.

### 2. The Jury Award is Excessive, Speculative, and Unsupported by Evidence

While "[g]enerally, a jury's award of damages is entitled to great deference, and should be upheld unless it is 'clearly not supported by the evidence' or 'only based on speculation or guesswork,'" *In re First Alliance Mortg. Co.*, 471 F.3d 977, 1001 (9th Cir. 2006) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)), an otherwise supportable verdict must be affirmed unless it is "grossly excessive" or "monstrous" or "shocking to the conscience."

1    *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760 (9th Cir. 1985); quoting *Fountila v. Carter*, 571 F.2d

2    487, 492 (9th Cir.1978).

3            Here, the Court correctly instructed the jury that its "award must be based upon evidence and not

4    upon speculation, guesswork, or conjecture." ECF No. 128 at 12. Yet, that is precisely what Mork asked

5    the jury to do during closing argument, ECF 138 at 552:12-553:5, and that this Court emphasized when

6    it provided the incorrect curative instruction that it should not consider who would pay any damage

7    award. Mork presented no damages expert, introduced no actuarial tables supporting his damages, and

8    testified that he suffered approximately $25,000 of economic damages related to dental costs and zero

9    related to the rash as it was no longer an issue. ECF No. 137 at 383:24-384:5. Based on the roughly

10   $25,000 in financial hardship, and understanding that the jury, within reason, is free to consider what

11   renumeration will quantify pain and suffering issues, the jury award still cannot shock the conscience.

12   And here, when the amount of medical expenses was $25,000, counsel's argument to the jury that "half-

13   a-million dollars," "a million dollars," or "$2 million," ECF No. 138 at 552:12-553:5, without any

14   evidence to support such numbers, clearly shows the argument stirred the passion and prejudices of the

15   jury, which in turn caused the jury award an amount that clearly "shocks to the conscience" considering

16   the evidence of damages presented. In *Herrington v. Sonoma Cnty.*, the Ninth Circuit found an award of

17   $2.5 million (a 3x multiple) on an $800,000 property loss was considered shocking to the conscience.

18   834 F.2d 1488, 1504 (9th Cir. 1987). If an award of approximately three times the value is considered

19   shocking to the conscience, then the award in the instant matter, over one hundred seventy-five (175)

20   times the amount Mork presented as evidence of his damages, must be considered excessive, speculative,

21   unsupported by the evidence and shocking to the conscience. *See also Keane v. Keane*, where a

22   "$4,000,000 award is 'so grossly excessive that it shocks the conscience.'" 893 F.2d 1338 (9th Cir. 1990).

23           In short, those very dollar amounts are based on speculation, conjecture, and guesswork since no

24   evidence was presented during the trial that would tie any pain and suffering award to a specific dollar

25   amount. To be sure, a jury may—based on its own determinations—decide the number that may be

26   appropriate, but a party cannot argue for a specific dollar amount when that argument is not tied to any

27   evidence introduced at trial.

28           **3.    Erroneous jury instruction unduly prejudiced Defendants**

The curative jury instruction was erroneous as it violated the spirit of the Eleventh Amendment as well as the principles set forth I the collateral source rule. The erroneous instruction allowed the jury to return a conscience shocking damages award based on the inference that the State of Nevada could be the party responsible for paying the damages award. *See supra* at 16:7 – 19:9.

4. **Defendants were unfairly prejudiced by the evidentiary ruling and jury instruction allowing demonstratives to be used as evidence of Mork's rash**

A party may be entitled to an adverse-inference instruction which permits a jury to "draw an adverse inference from the destruction or spoliation" of evidence against the spoliation party responsible for that behavior. *Glover v. BIC Corp.*, 6 F.3d 1318, 1319 (9th Cir. 1993) (emphasis added).

As it relates specifically to issuing spoliation sanctions, the Ninth Circuit has confirmed that courts have some "inherent authority to impose sanctions for spoliation of evidence." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006), superseded by rule as stated in *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 354 n. 16 (D. Ariz. 2022) (noting that Leon was "decided before the 2015 amendments to Rule 37(e) regarding electronically storied information).

Courts within the Ninth Circuit historically have applied the three-part test originally adopted by the Second Circuit in adopted from the Second Circuit in *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002), superseded by rule in part as stated in *Hoffer v. Tellone*, 128 F.4th 433, 435 (2d. Cir. 2025).  That test requires that when a party seeks to impose an adverse-inference instruction based on spoliation of evidence, it must establish: (1) that the party "having control over the evidence had an obligation to preserve it at the time it was destroyed;" (2) that the records were destroyed with a "culpable state of mind;" and (3) that the evidence was "relevant" to the party's claim or defense such that "a reasonable trier of fact could find that it would support that claim or defense." *MetaPlatforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp.3d 1218, 1236-37 (D. Nev. June 6, 2022) (emphasis added) (citing *Residential Funding Corp.*, 306 F.3d at 107-8 and *Miranda v. Wyatt*, 677 Fed. Appx. 432, 433 (9th Cir. 2017) (adopting Residential Finding's 3-part test).  Failure to establish these three prongs and still receiving an adverse instruction can be an abuse of discretion. See generally *AMC Tech., LLC v. Cisco Sys., Inc.*, 11-CV-3403 PSG, 2013 WL 3733390, at *2 (N.D. Cal. July 15, 2013) (courts inherent discretion to provide adverse inferences or other sanctions is not unbounded and must be narrowly

tailored).

Here, while Defendants will concede that photos were arguably relevant to both Mork's and Defendants' cases and that Dr. Naughton had control over them. Dr. Naughton was not aware of any obligation to preserve the photos at the time they were deleted and they were not deleted with a culpable state of mind. Dr. Naughton testified that after he had retired from working for NDOC, he was deleting photos of patients that he had used for diagnostic purposes and Mork's photos were part of that. ECF No. 137 at 200:23-201:11. Naughton admitted knowledge of the lawsuit but was not aware of any obligation to save the photos as the existence of the rash was not an issue in the matter. *Id*. He even states, "it was…not an attempt to try to hide anything." *Id*.

Clearly, the first and second prong have not been met. In addition, to not meeting the standard for an adverse-inference instruction, the use of textbook photos was overly prejudicial to correct the error because there were less prejudicial means such as providing the Jury with a permissive, not mandatory, instruction that Mork's testimony of the rash could be considered fact, should an adverse instruction be found necessary. The allowance of demonstrative exhibits to be considered actual exhibits despite them not being admitted into evidence doubled up the prejudicial effect against the Defendants.

## C.    ALTERNATIVE REQUEST FOR REMITTITUR

If a district court determines that the jury has awarded an excessive damages award, "it has two alternatives.  It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983). Under the latter alternative, "[t]he prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified." *Id*. "[I]f the prevailing party does not consent to the reduced amount, a new trial must be granted. If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount." *Id*. "A remittitur must reflect the maximum amount sustainable by the proof." *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (quotation omitted).

Here, if this Court is not convinced a new trial is required given the lack of evidence supporting either the liability finding or the damages award, this Court should exercise its discretion to remit the damages award.  The curative instruction went too far, putting into the jury's mind that the State of

Nevada would be paying any damages award. That was clear error.  Indeed, as noted in *Katch v. Speidel, Div. of Textron, Inc.*, 746 F.2d 1136, 1139 (6th Cir. 1984), in situations where "an incorrect proposed instruction is submitted which raises an important issue of law. . . it becomes the duty of the trial court to frame a proper instruction on the issue raised." *See also Warren v. City of Lincoln*, 816 F.2d 1254, 1257 n. 2 (8th Cir. 1987); *United States v. Rodriguez*, 880 F.3d 1151, 1159 (9th Cir. 2013); *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1015 (9th Cir. 2007). Here, during the side bar and subsequent oral argument (ECF No. 138 at 573:3-585:1), both Defendants and Mork provided this Court with proposed curative instructions. Defendants did so even though they continued to argue that no such instruction was appropriate. As such, this Court decided to give its instruction implicating the State of Nevada as a payor of any damages award in violation of the Eleventh Amendment. This clear error can be corrected by remitting the damages award to ensure the Jury does not over-compensate Mork because "the State will pay for it."

Here, if this Court is not convinced a new trial is required given the lack of evidence supporting either the liability finding or the damages award, this Court should exercise its discretion to remit the damages award.  Mork only ever presented evidence of damages in the amount of approximately $25,000, an amount that clearly does not support an award of $4,347,750. ECF No. 137 at 383:24-384:5.

### III.    CONCLUSION

Defendants are entitled to relief under FRCP 50(b) and 59 due to several trial errors, all of which—individually and collectively—resulted in denial of a fair trial to Defendants.  Defendants were unduly prejudiced, which is demonstrated by the shockingly excessive and unsupported award of monetary damages.  Defendants request that the Court enter judgment on their behalf, or in the alternative, set this matter for a new trial to cure the evidentiary issues or remit the damages award.

Respectfully submitted this 18th day of July, 2025.

AARON D. FORD
Attorney General

By:    /s/ *Douglas R. Rands*
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General
MARK HACKMANN, Bar No. 16704
Deputy Attorney General
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on July 18, 2025, I electronically filed the foregoing, **DEFENDANTS' RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, ALTERNATIVE RULE 59 MOTION FOR NEW TRIAL, AND ALTERNATIVE REQUEST FOR REMITTITUR** via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by depositing a copy for mailing, addressed to the following:

Adam J. Breeden, Esq.
Breeden & Associates, PLLC
7432 W. Sahara Ave., Suite 101
Las Vegas, NV 89117
adam@breedenandassociates.com

Anna Holland Edwards, Esq.
Colo. Bar No. 35811
HOLLAND, HOLLAND EDWARDS &
GROSSMAN, LLC
1437 High Street
Denver, Colorado 80218
anna@hheglaw.com

*/s/ Connie L. Fondi*
An employee of the
Office of the Attorney General