AARON D. FORD
  Attorney General
DOUGLAS R. RANDS, Bar No. 3572
  Senior Deputy Attorney General
MARK HACKMANN, Bar No. 16704
  Deputy Attorney General
State of Nevada
100 N. Carson Street
Carson City, Nevada 89701-4717
Tel: (775) 684-1150
E-mail:  drands@ag.nv.gov
            mhackmann@ag.nv.gov

*Attorneys for Defendants*
*Kathleen Henderson*
*and Dr. Martin Naughton*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NICOLAI MORK,<br><br>                              Plaintiff,<br><br>vs.<br><br>PERRY RUSSELL, et al.,<br><br>                              Defendants. | Case No.  3:21-cv-00077-MMD-CSD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST ECF NO. 139** |

Defendants, Kathleen Henderson and Dr. Martin Naughton, by and through counsel, Aaron D. Ford, Attorney General of the State of Nevada, Douglas R. Rands, Senior Deputy Attorney General, and Mark Hackmann, Deputy Attorney General, hereby submit Defendant's Opposition to Plaintiff's Motion for Attorney Fees, Costs, and Interest. ECF No. 139.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND SUMMARY OF DEFENDANTS' OPPOSITION

Plaintiff Nicolai Mork (Mork) was in custody at the time he filed this lawsuit.  The Prison Litigation Reform Act (PLRA) therefore applies to this case.  Under the PLRA, up to 25% of the jury award must be used to satisfy attorney fees, before Defendants have an obligation to pay attorney fees. Only when fees are in excess of that number do the other PLRA restrictions, fees and costs come into play to reduce the amount further.

1    Here, the jury awarded Mork $4,347,750. As such, any award of attorney fees and

2    costs up to $1,086,937.50 must be paid out of this judgment. Mork's counsel has sought

3    $375,441.50 in fees and $32,027.51 costs, which is far less than the $1,086,937.50 amount

4    required to first be paid out of the jury verdict before being assessed to the Defendants,

5    should this Court decide to award such fees and costs.

6    In addition, assuming the PLRA does not apply (which it clearly does), this Court

7    should exercise its discretion to deny the requested attorney fees, or alternatively,

8    significantly reduce the amount requested.

9    **II.    STATEMENT OF FACTS**

10    Mork filed this civil rights complaint on February 9, 2021, while in custody at

11    Stewart Conservation Camp (SCC), incorrectly spelled as "Stuart" on the complaint form.[1]

12    On February 10, 2021, this Court issued a minute order requiring Mork to either pay the

13    $2 of his filing fee that remained outstanding or submit a complete application to proceed

14    *in forma pauperis* (IFP) by April 5, 2021.[2] Mork did not comply with the minute order by

15    the deadline, so on May 5, 2021,this Court issued an order that gave Mork an extension up

16    to and including July 5, 2021, to comply by paying the remaining $2 or submitting an

17    application to proceed IFP, or the case would be subject to dismissal without prejudice.[3] On

18    May 12, 2021, Mork complied by paying the $2 that remained outstanding from the filing

19    fee.[4] This Court issued its screening order on September 23, 2021, noting that although

20    Mork is no longer incarcerated, the PLRA required the court to screen the complaint

21    because he was still in custody at the time of filing.[5] The screening order later ordered the

22    Clerk of the Court to file the complaint and inform Mork that he may file an amended

23    complaint to address the deficiencies in the claims that were not permitted through, but

24    that he must do so within 30 days of the entry of the screening order.[6] Mork never filed an

25    ---

26    [1] ECF No. 1 at 1; *see also* ECF No. 8.
      [2] ECF No. 3.

27    [3] ECF No. 5.
      [4] ECF No. 6.

28    [5] ECF No. 7 at 1 n.1.
      [6] *Id*. at 13:13-14:13

amended complaint.  As such, the February 9, 2021, complaint – filed while Mork was in custody – remained the operative complaint.[7]

Mork successfully litigated this matter pro se through summary judgment and a motion for sanctions regarding spoilation and when Plaintiff's counsel was retained only for trial preparation and trial.[8] Attorneys Grossman and Breeden are billing $27,775.00 and $29,370 respectively, neither of whom took any witnesses nor made any oral arguments during the trial.[9] At the conclusion of the trial, the jury awarded Mork compensatory damages in the amount of $540,000 regarding the rash and $3,807,750 regarding the dental needs to make him whole, none of which was regarding lost wages or taken property.[10]

## III.    STANDARD FOR GRANTING ATTORNEYS' FEES

While courts have discretion to award attorney fees under 42 U.S.C. § 1988, that discretion is significantly curtailed by the PLRA in cases brought by prisoners under 42 U.S.C. § 1983.[11] First, the PLRA requires payment only of those attorney fees "directly and reasonably incurred in proving an actual violation of" be awarded.[12] The PLRA also requires that up to 25% of any monetary judgment be used toward the payment of any attorney fee awarded, which requires Mork to pay up to $1,086,937.50 toward any fee awarded before Defendants have any obligation to pay, as that is 25% of $4,347,750.[13]

Mork bears the burden of establishing the reasonableness of the fees and must submit evidence supporting the claimed rate and hours worked.[14] The district court may exclude from the fee request any hours that are "excessive, redundant, or otherwise unnecessary."[15] Further, while a lodestar enhancement may be considered, given that the

///

---

[7] ECF No. 10 at 1:10-23.
[8] ECF Nos. 58, 66 & 81.
[9] ECF No. 139 at 10.
[10] ECF No. 131.
[11] *Murphy v. Smith*, 583 U.S. 220, 226-28 (2018).
[12] 42 U.S.C. § 1997e(d)(1); ECF No. 188 at 29:8-9.
[13] *Id.*; *Murphy*, 583 U.S. at 228.
[14] *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).
[15] *Id.* at 946 (citing *Hensley*, 461 U.S. at 434).

PLRA already includes a lodestar figure by "authoriz[ing] multipliers to the base hourly rate of the cap set by" §1997e(d)(1),[16] there is

> "[a] strong presumption . . . that the lodestar figure represents a reasonable fee," and the district court "must 'decide whether to enhance or reduce the lodestar figure based on an evaluation' of the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), "that are not already subsumed in the initial lodestar calculation." "[A]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion."[17]

The twelve *Kerr* factors have been incorporated into this Court's LR 54-14(a)(3), and they are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[18]

Local Rule 54-14 adds a thirteenth, catch-all factor allowing the court to request any information it wishes to consider from the party.

## IV.    ARGUMENT

### A.    Because Mork is Required to Pay Up to 25% of the Jury Award to Pay Attorney Fees, Mork's Motion for Fees Must be Denied

Section 42 U.S.C. § 1997e(d)(2) unambiguously states:

> Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of

---

[16] *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020) (citing *Kelly v. Wengler*, 822 F.3d 1085, 1100 (9th Cir. 2016).

[17] *Id.* at 466-67 (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 and n. 4 (9th Cir. 2000) and *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988)).

[18] *Mayorga v. Ronaldo*, 656 F. Supp. 3d 1218, 1229 (D. Nev. 2023) (*app pend*, No. 23-15359) (quoting *Kerr*, 526 F.2d at 70); *see also* LR 54-14.

> attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.[19]

Mork admits in passing that this requirement exists,[20] but does so without any acknowledgment that the 25 percent cap is well in excess of the fees sought, as the motion immediately pivots to arguing that the PLRA does not apply in this case. While that argument is novel, it must be rejected.

Indeed, Mork agrees with Defendants that the PLRA applies when a complaint is filed by an incarcerated prisoner.[21] Here, it is undisputed that Mork filed the Complaint on February 9, 2021, while he was residing in custody of NDOC at SCC.[22] This is without debate, as this Court's stamp in the upper right-hand corner of page one (1) of the Complaint, clearly show the fields "Filed" and "Received" as check marked.[23] As such, it is beyond dispute that the Complaint was accepted and filed on February 9, 2021, and not on September 23, 2021, as Mork argues in his Motion.[24] And while Mork attempts to distinguish this point by relying on his failure to properly pay the fee associated with the Complaint, he concedes that "his initial complaint was publicly filed six months prior [to September 23, 2021].[25] Mork was not paroled and released from custody until March 24, 2021.[26] Therefore, he was in fact incarcerated at the time he filed the Complaint.

In addition to the file stamp and admission that the Complaint was filed while Mork was in custody, this Court noted in the mandatory PLRA screening procedure that because "Mork was incarcerated when he filed his Complaint, this Court will screen the Complaint."[27] The note continues to state that any amended complaint would not be subject to screening, but that the original complaint filed on February 9, 2021, is subject to the ///

---

[19] 42 U.S.C. § 1997e(d)(2).
[20] ECF No. 139 at 11:14-18
[21] ECF No. 139 at 11:19-21.
[22] ECF No. 1.
[23] *Id.*
[24] ECF No. 139 at 12:14-17.
[25] ECF No. 139 at 18:16-21.
[26] ECF No. 138 at 523:22-24.
[27] ECF No. 7 at 1 n. 1.

PLRA and for that reason it was screened.[28] Here, Mork never filed an amended complaint. Instead, Mork's case proceeded under the February 9, 2021, Complaint and the screening order which governed that Complaint. As such, this matter is subject to the PLRA and its limitations regarding attorney fees, costs, and interest.

### 1. The PLRA Governs This Case

In an effort to take this case out of the plain language and requirements of the PLRA, Mork references *Jackson v. Fong*,[29] to argue that the PLRA does not apply in this matter.[30] However, *Jackson* is of no assistance to Mork because there, unlike here, the plaintiff filed an amended complaint after being released from custody. Therefore, there, unlike here, the operative complaint governing the action was filed *after the plaintiff was released from custody*. That is not the case here, as Mork filed the governing and PLRA screened complaint while in custody.[31] Additionally, this case only supports the proposition that the PLRA exhaustion defense does not apply. There is nothing in the decision suggesting the attorney fee provisions of the PLRA would not apply.

Mork also cites *Saddozai v. Davis*[32] to suggest the PLRA should not apply.[33] *Saddozai* is of no assistance to Mork. There, the plaintiff filed his initial complaint before exhausting administrative remedies. The controlling complaint, the third amended complaint was filed after plaintiff had exhausted his available remedies. The court in *Saddozai* also made clear their opinion only dealt with the PLRA exhaustion analysis not PLRA application as a whole,[34] which is the issue before this Court in Mork's motion for attorney fees. Here, Mork never filed an amended complaint, so the operative complaint was filed while he was incarcerated and the analysis and opinion regarding the PLRA exhaustion defense does not factor into this request for attorney fees and the PLRA's governance of the request.

---

[28] *Id.*
[29] 870 F.3d 928, 933, 937 (9th Cir. 2017).
[30] ECF No. 139 at 11:19-12:1.
[31] ECF No. 1; ECF No. 7 at 1 n. 1.
[32] 35 F.4th 705, 709-10 (9th Cir. 2022)
[33] ECF No. 138 at 11:19-12:1.
[34] 35 F.4th 705, 710 (9th Cir. 2022)

Mork also cites *Talamantes v. Leyva*[35] in support of his argument that the PLRA does not apply.[36] However, *Talamantes* is also distinguishable from this matter in fact and ruling. There, the plaintiff undisputedly filed the initial complaint after being released from custody as opposed to here, where Mork undisputedly filed the complaint while in custody.[37] Also, in *Talamantes*, the court analyzed and opined regarding the application of the exhaustion defense under the PLRA prior to filing suit, for complaints filed after release from custody, and made no reference to the PLRA governing requests for attorney fees.[38]

Further, Mork cites *Page v. Torrey*,[39] which holds that the plaintiff while civilly admitted to a state hospital is a not a prisoner and therefore the PRLA exhaustion defense and IFP requirements did not apply. Yet, here, Mork was never civilly admitted to a hospital and never submitted an IFP application.[40] *Page* also fails to mention any opinion or analysis regarding the PLRA governing attorney fee requests.

Mork then cites *Kerr v. Puckett*,[41] *Norton v. City of Marietta, Okla.*,[42] and *Greig v. Goord*,[43] as authorities that show this matter should not be governed by the PLRA.[44] However, in all three cases, the analysis and opinions of the courts were regarding complaints filed after a plaintiff having been released from custody and only state that the PLRA exhaustion requirement does not apply to those who were formerly incarcerated,[45] which is not at issue in this current motion. Here, Mork was undisputedly incarcerated when he filed his action and therefore the PLRA applies to the request for attorney fees.

///

---

[35] 575 F.3d 1021, 1024 (9th Cir. 2009)
[36] ECF No. 138 at 11:24-12:1.
[37] ECF No. 1; ECF No. 7 at 1 n. 1.
[38] 575 F.3d 1021 (9th Cir. 2009).
[39] 201 F.3d 1136, 1139–40 (9th Cir. 2000).
[40] ECF No. 6.
[41] 138 F.3d 321, 323 (7th Cir. 1998).
[42] 432 F.3d 1145, 1150 (10th Cir. 2005).
[43] 169 F.3d 165, 167 (2nd Cir.1999).
[44] ECF No. 139 at 12:17-13:1.
[45] *See generally Kerr*, 138 F.3d at 323; *Norton*, 432 F.3d at 1151; *Greig*, 169 F.3d at 167.

1    *Doe v. Washington County*[46] is Mork's only persuasive authority that states an

2    opinion regarding limitations of attorney fees under the PLRA. First and foremost, there,

3    unlike here, in *Doe*, the plaintiff was no longer in custody when he filed his complaint,

4    therefore the court opined that the PLRA did not apply to the action, including attorney

5    fees.[47] The instant matter is factually distinguishable from this the non-binding, out of

6    circuit case, in that here Mork filed his complaint while still in custody (the determining

7    factor) and therefore the PLRA applies including limitations on awarding attorney fees.

8        Mork further cites the additional non-binding, out of circuit cases of *Minix v.*

9    *Pazera*[48] and *Kackley v. CMS*[49] to establish authority that a plaintiff, once released from

10   custody, may file suit, even reciting the same claims that were dismissed for failure to

11   exhaust per the PLRA, in a new or amended complaint not subject to the PLRA.[50] While

12   these authorities would be helpful in a scenario where Mork filed an amended complaint

13   or refiled a previously dismissed complaint, they do not help here as he was in custody

14   when he filed the operative complaint, the complaint was screened, and the complaint was

15   never dismissed or amended. Mork's analogizing his situation to the factual scenarios in

16   those cases misses the mark and his further assertion that the complaint had not been

17   accepted for filing because he expressly faced dismissal without prejudice due to his failure

18   to pay the appropriate filing fee is completely erroneous because the complaint was

19   accepted for filing and was never dismissed as Mork eventually paid the $2.00 he was

20   ordered to pay to ensure the complaint was not dismissed.[51]

21       Mork also attempts to sidestep the PLRA requirements by arguing that because he

22   failed to pay the appropriate filing fee, which resulted in this Court issuing its February

23   10 and May 5, 2021, Orders noting that if the entire filing fee was not paid within 55 and

24   ///

---

25   [46] 150 F.3d 920, 924 (8th Cir.1998).

26   [47] *Doe*, 150 F.3d. at 924.
     [48] No. 3:06-CV-398RM, 2007 WL 4233455, at *5 (N.D. Ind. Nov. 28, 2007).

27   [49] No. 8:05CV284, 2006 WL 120150, * 1 n. 1 (D. Neb. Jan.17, 2006).
     [50] ECF No. 139 at 13:2-20.

28   [51] ECF No. 139 at 13:15-20; ECF No. 3; ECF No. 5 at 1.

60 days respectively, the case would be dismissed, the PLRA does not apply.[52] These Orders do not support his argument, though, as they are evidence that this case was filed and pending during Mork's incarceration. Otherwise, if the lack of full payment of the filing fee had resulted in this case being dismissed as argued by Mork, the case would have been dismissed at that time. But instead, this Court issued several orders between February 9, 2021, and full payment being made by Mork on May 12, 2021.[53] As such, this Court accepted the Complaint as filed on February 9, 2021, and proceeded through the matter from that date forward.[54] Thus, it is clear the PLRA applies and governs this case, including any request for discretionary attorney fees. Any other ruling would not only be contrary to the law and undisputed factual timing of the filing in this case, but would also allow offenders, including Mork, to avoid the dictates and limitations of the PLRA due to their errors – either mistakenly or intentionally – in filing lawsuits contrary to the mandatory nature of the PLRA. To be clear, it was Mork who failed to ensure all procedural steps were completed at the time of his filing. His failure to ensure prompt and full payment at the time of the filing of the Complaint – or taking other steps to ask that the payment be made over time, cannot be rewarded by allowing him attorney fees in an amount not permitted under the PLRA.

Lastly, Mork points to *Cano v. Taylor*[55] and *Rhodes v. Robinson*[56] to show that when amended complaints are filed and they become the operative complaint, the date of filing of the amended complaint will be the determination whether exhaustion under the PLRA is required. While this case law is on point for factual scenarios involving the filing of amended complaints, it has no use here as Mork never filed an amended complaint.

As such, the PLRA applies. Thus, any award of attorney fees in this case must first be paid out of the judgment amount received by Mork. Because the amount being sought

///

---

[52] ECF No. 139 at 12:2-13:20; ECF No. 3; ECF No. 5 at 1.
[53] *See* ECF No. 3; ECF No. 5; ECF No. 6.
[54] ECF No. 1; ECF No. 7 at 1 n. 1. *see also* ECF No. 10 at 1:10-19.
[55] 739 F.3d 1214, 1220 (9th Cir. 2014).
[56] 621 F.3d 1002, 1006 (9th Cir. 2010).

here is far less than the 25% requirement mandated by the PLRA, no additional amount of money is owed by Defendants for attorney's fees in this case.

### 2. Because the Attorney Fees Sought Are Less than 25% of the Total Jury Award, Mork is not Entitled to an award of Attorney Fees

Ninth Circuit precedent unambiguously holds that § 1997e(d)(2) applies to this case. In *Woods v. Carey*,[57] the Ninth Circuit, reiterated that the monetary judgment cap set forth in § 1997e(d)(2) controls all cases before the trial court that involve monetary judgments. There, *Woods* held in 2003 that the Ninth Circuit had "limited the applicability of the fee cap to those fees awarded only in conjunction with the obtaining of a monetary judgment."[58] In reaching that conclusion, *Woods* "held that the fee does not apply to attorney's fees incurred in securing non-monetary relief when a prisoner is awarded both a monetary judgment and a declaration judgment or injunction in the same proceeding."[59]

Here, Mork obtained a $4,347,750 monetary jury award.[60] Mork did not receive any declaratory judgment or injunctive relief. Thus, as *Woods* held, § 1997e(d)(2) applies to this case, and this therefore requires that the first 25% of the judgment be used to pay any attorney fee award.[61]

Accordingly, even if this Court is convinced that Mork's requested attorney fees amount of $375,441.50 is reasonable and appropriate, because § 1997e(d)(2) requires Mork to pay up to $1,086,937.50 (25% of the jury award), all of the fees sought by Mork are required to be paid out of the existing jury award.

### B. Even Assuming the PLRA Does Not Apply, This Court Should Not Award Any Further Amount for Attorney Fees

If this Court determines that the plain language of the PLRA and the holding of *Woods* and its progeny does not apply here, given the gravamen of this lawsuit and the fact

---

[57] 722 F.3d 1177 (9th Cir. 2013).
[58] *Id*. at 1181 (citing *Dannenberg v. Valdez*, 338 F.3d 1070, 1074-75 (9th Cir. 2003)).
[59] *Id*. (citing *Dannenberg*, 338 F.3d at 1074-75).
[60] ECF No. 188 at 31:8-9; ECF No. 189.
[61] 42 U.S.C. § 1997e(d)(2); *Dannenberg*, 338 F.3d at 1073-75 (quoting *Boivin,* 225 F.3d at 41).

it was filed by an offender while in custody, it is still appropriate for this Court to consider the PLRA limitations and requirements in consideration of any additional award of attorney's fees.

### 1.    Establishing The Lodestar Figure

The first factor for this Court to consider in awarding attorney fees is to calculate whether the lodestar figure should increase the amount of the attorney fee from the default amount the PLRA permits.

The PLRA alters the lodestar method in prisoner civil rights cases in three fundamental ways.[62] First, the hours used to determine the fee are limited to those that are directly and reasonably incurred in proving an actual violation of the plaintiff's rights and are either proportionately related to court-ordered relief or directly and reasonably incurred in enforcing such relief.[63] Second, in actions resulting in monetary judgments, the total amount of the attorney's fees award associated with the monetary judgment is limited to 150 percent of the judgment.[64] Third, the hourly rate used as the basis for a fee award is limited to 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA rate").[65]

### a.    The CJA Hourly Rate

In PLRA cases, the analysis is similar to that in other civil rights cases, though a court must calculate the lodestar figure using a base rate no greater than the PLRA rate specified in § 1997e(d)(3).[66] In other words, the PLRA rate virtually always replaces the prevailing market rate as the presumptively reasonable rate in the court's determination of the lodestar figure because actual prevailing rates are very unlikely to be as low as the PLRA rate.[67] According to the Criminal Justice Act, and the rates approved for the payment of attorneys in 2025, the applicable CJA hourly rate for 2025 is $175 per hour which results

---

[62] *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citing 42 U.S.C. § 1997e(d)(1)).
[63] *Id.* at 1099-1100.
[64] *Id.* (citations omitted).
[65] *Id.* (citing 42 U.S.C. § 1997e(d)(3)).
[66] *Id.*
[67] *Id.* (citations omitted).

in rate capped at 150% of that, or $262.50 per hour. The reasonableness of the hours for each team member will be discussed *infra* at (b)(1)(i)-(v).

### b.    The Hours Requested Are Not Reasonable

When determining the number of hours "reasonably expended" on a case, the district court should consider whether the applicant already has excluded hours that were "excessive, redundant, or otherwise unnecessary."[68] Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from her fee submission.[69]

It is not sufficient for prevailing counsel to opine that all of the time claimed was usefully spent, and the district court should not uncritically accept counsel's representations concerning the time expended.[70] The proper standard is not whether the attorneys involved felt their time was usefully spent, but whether the time spent was reasonably necessary to the effective prosecution of plaintiff's claims.[71]

### (1)    Excessive Hours

In calculating the fees for this case, that calculation should be limited to time spent on trial. Time spent on post-verdict activities such as the Motion for Attorney's Fees, Costs, and Interest are not reasonably related to proving an actual violation of Mork's rights as required under the PLRA and should be denied.

In total, as explained below 77.8 hours (28.4+2.3+43.6+3.5) should be deducted from the total because they are excessive.

### i.    Attorney Holland Edwards

Attorney Holland Edwards is seeking payment for 28.4 hours of legal fees post-trial to draft the motion for attorneys' fees, costs, and interest.[72] As noted above, in addressing

---

[68] *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (citing *Hensley*, 461 U.S. at 434).

[69] *Hensley*, 461 U.S. at 434.

[70] *Jordan v. Multnomah County*, 815 F.2d 1258, 1263, n. 8 (9th Cir. 1987) (citation omitted).

[71] *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385, n.4 (9th Cir. 1984).

[72] ECF No. 139-10 at 17-21.

why the PLRA undisputedly applies to this case, the attorney fee petition was wholly unnecessary as the amount sought is less than 25% of the judgment award. In addition, as this post-trial motion is not directly related to proving an actual violation of Mork's rights nor are they related to court-order relief or enforcing relief, even assuming the PLRA cap does not apply, they should be denied.

### ii.    Attorney Kennedy

Attorney Kennedy is seeking payment for 43.6 hours of legal fees post-trial to draft the motion for attorneys' fees, costs, and interest.[73] For the same reasons as the 28.4 hours addressed above regarding Attorney Holland Edwards in section (i), these fees should be denied.

### iii.    Paralegal Thiele-LaForest

Paralegal Thiele-LaForest is seeking payment for 2.3 hours of legal fees post-trial to draft the motion for attorneys' fees, costs, and interest.[74] Just as with sections (i) and (ii) above, these fees were unnecessary and not incurred as part of proving an actual civil rights violation.  Therefore, these fees should be denied.

### iv.    Law Clerk Richards

Law Clerk Richards is seeking payment for 3.5 hours of legal fees post-trial to draft the motion for attorneys' fees, costs, and interest.[75] Just as above in sections (i) – (iii), these fees should be denied.

### v.    Attorney Grossman

Attorney Grossman is seeking payment for 50.5 hours of legal fees for her attendance at the trial.[76] However, she never made an appearance as an attorney of record in the matter and was not trial counsel.[77] The trial team for Mork consisted of two (2) attorneys and a paralegal physically present and a law clerk assisting remotely. Accordingly, it

---

[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] ECF No. 139 at 10:15-26

appears as if Attorney Grossman was present at the trial in a supervisory role. And while that is certainly within the purview of counsel and the client, to have a supervisory attorney present at trial, they are not entitled to receive attorney fees for 50.5 hours that are redundant of other hours being submitted by Ms. Holland Edwards, who is also a partner with the firm and lead counsel on the case, and Ms. Kennedy. Defendants respectfully suggest this Court should use its discretion to reduce the amount of compensable fees for three attorneys being present for the entirety of the trial.

### (2)    Otherwise Unnecessary Hours

If there is no reduction based on excess or redundancy of hours as discussed above, then the total sum of 105.5 hours for Attorney Breeden and Attorney Grossman should be denied as unnecessary. As discussed previously, Ms. Grossman never appeared as an attorney in the matter and by all accounts performed an internal supervisory role for HHEG. Similarly, Attorney Breeden's work was largely duplicative of Attorney Kennedy and Attorney Holland Edwards in reviewing their work.  In this regard, Attorney Breeden's involvement in this case appears to have been based on the need for local counsel.  That said, it was Mork's and his counsel's decisions to have outside counsel try this case as opposed to Attorney Breeden.  This decision resulted in having additional counsel being part of the trial team. This redundancy does not create an entitlement to additional fees.

### 2.    Lack of Support for Lodestar Enhancement

Enhancements to the lodestar figure are available only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."[78] As in non-PLRA cases, the district court may enhance the lodestar figure when plaintiff's counsel's "superior performance and commitment of resources" is "rare" and "exceptional" as compared to the run-of-the-mill representation in such cases.[79] The facts and circumstances of this case, as outlined more thoroughly below, do not warrant enhancement.

---

[78] *Kelly*, 822 F.3d at 1102.
[79] *Id.* at 1103.

### a.    The Time and Labor Required

This case was due to be set for trial one week before plaintiff's counsel entered their appearance. The only remaining filing was the Joint Pretrial Order (JPTO). Discovery was complete; however, the parties stipulated to re-opening limited discovery to allow five (5) interrogatories, requests for production, and requests for admission to each party. In addition, Mork was permitted to obtain expert witnesses. No dispositive motions were necessary to be filed.  And while Defendants filed a motion in limine due to the late disclosure of a witness, it was denied without a response.[80] There was no need for an excessive expense of time or labor to proceed to trial with three main witnesses, Mork and the two Defendants, Dr. Naughton and Nurse Henderson. The other witnesses were cumulative witnesses supporting the testimony of Mork. Dr. Fishbein and Adam Plumer were friends of Mork's and did not provide any additional testimony to that of Mork. Mork also provided expert testimony by Dr. Flynn, which was unnecessary as there was no controversy as to the ailments that Mork suffered. Lastly, Warden Breitenbach provided testimony as to the procedural operations of the prison and the camp, however, there were no issues of fact regarding procedures of the facility. The trial was only two and half days when 4 days were allotted. As the motion for attorney's fees acknowledges, because Mork "ably represented himself, and already survived Defendants' Motion for Summary Judgment," it was clear that the only work left was to prepare for trial and try the case.[81] Even more so, Mork's counsel entered into a reduced contingency agreement with Mork "to recognize Mr. Mork's work on the matter as a pro se litigant" clearly indicating that the time and labor required do not support an enhancement.[82]

### b.    The Novelty and Difficulty of the Questions Involved

As the motion for attorney's fees acknowledges, Mork very ably litigated this case on paper, and he only needed an attorney to help him present his claims at trial. The Court

---

[80] ECF No. 120; ECF No. 121.
[81] ECF No. 139-4 at 4 ¶12.
[82] ECF No. 139 at 16:16-18.

ruled that all affirmative defenses were removed except for qualified immunity and Mork dropped the deliberate indifference claim against Henderson regarding the rash.[83] This left two of the same claims, one against each defendant. Additionally, in the group of declarations in support of the fee rate for Mork's counsel, there are pages and pages listing Mork's counsel's successes in the cases concerning the same claims as this matter and many mentions of awards and how expert they are in these claims.[84] While these statements and success are admirable and go to counsel's acumen, it also establishes that given their expertise, the issues in this case were not novel or difficult for them based on their previous success and knowledge. As such, those issues weigh against an enhancement.

### c.    The Skill Requisite to Perform the Legal Service Properly

Mork's counsel states in her declaration that she has primarily focused on litigating deliberate indifference to medical needs cases. Her experience and expertise in this area would weigh against an enhancement as this was not a rare and/or exceptional outcome given her history. While some civil rights issues can be complex, and some of those cases involve overcoming difficult case facts, here, the case was straightforward and the facts sufficiently narrowed given the ruling on the dispositive motions made by this Court based on arguments made by Mork, not his counsel.

### d.    The Preclusion of Employment by the Attorney Due To the Acceptance of the Case

The bulk of the hours expended on this case by Mork's counsel took place between June 14, 2025, and June 20, 2025. This limited timeline does not preclude other employment. While Defendants do not dispute that Mork's counsel likewise have demanding caseloads, admittedly much of that caseload is prisoner civil rights cases. Thus, there is no evidence that this case "took considerable time out of their normal practice," as prisoner civil rights cases are part and parcel of their normal practice.

///

///

---

[83] ECF No. 126 at 445:14-17.
[84] ECF Nos. 139-1 – 139-6.

### e.    The Customary Fee

The PLRA sets a customary fee, by statute, for inmate civil rights litigation. The PLRA allows for a maximum hourly rate of not more than 150% of the CJA rate. This does not require courts to grant hourly fees in that amount. In this case, there is no basis for an upward adjustment and the appropriate standard for this Court to apply is the CJA rate for 2025.

### f.    Whether The Fee Is Fixed or Contingent

The motion claims the case was taken on a contingent basis,[85] but there is no copy of the fee agreement included. In addition, while Mork's counsel has stated that the agreement "provides the base and not the ceiling for Plaintiff's attorney fee award," without knowing what the "base" is in the contingency fee agreement, there is no way for this Court to weigh this factor.

### g.    The "Undesirability" Of The Case

There is nothing in the record to suggest that this case was undesirable. In fact, Ms. Holland Edwards routinely takes prisoner civil rights cases, including medical indifference cases.

### h.    Awards In Similar Cases

Mork only relies on one case in support of the attorney fees award request, which is readily distinguishable, *Miller v. Aranas.*[86] *Miller* is wholly distinguishable from this case. There, the parties entered into a Settlement Agreement that explicitly left the issue of attorney fees to be decided by the court. The underlying dispute in that case involved issues under Title II of the American Disabilities Act as well as under the Eighth Amendment. In awarding attorney fees, the District Court specifically noted that the PLRA did not apply,[87] because unlike here, there, the plaintiff's counsel filed both a second amended and third amended complaint, as well as a preliminary injunction motion seeking changes to

///

---

[85] ECF No. 139 at 16:16-18.
[86] 3:17-cv-00068-MMD-CSD
[87] *See Id.*, ECF No. 148 at 1:20-23, 4:12-16 n. 3.

underlying medical policies of the NDOC, with other counsel being added shortly before trial on these equitable and injunctive related issues.[88]

This is wholly different than Mork's attorneys, who did not appear until the case was in trial posture, involved individual claims for monetary relief only, and there was no ADA component. In short, the attorney fee award in *Miller* was based on the ADA claim which this Court concluded was not subject to the PLRA and the plaintiff received injunctive relief.[89] This Court also noted that because the § 1983 claim also sought equitable relief, the PLRA would not apply in that instance either (although this was dicta as the court specifically awarded them under the ADA).[90]

Accordingly, the case Mork relies on in this motion is not similar to this case nor indicates a similar award was granted.

## C.    Mork Is Not Entitled To Prejudgment Interest

In this Circuit, "the ultimate decision whether to award prejudgment interest lies 'within the court's sound discretion, to be answered by the balancing of the equities.'"[91] Prejudgment interest is a measure that "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."[92] In this case, the imposition of prejudgment interest would not further the goal of remedying violations of Mork's civil rights. This is not a case where the government is accused of holding Mork's property through the takings clause.[93] This is not a claim that civil asset forfeiture deprived Mork of funds during the pendency of the litigation as was the situation in *Western Pacific Fisheries, Inc., v. SS President Grant.*[94] Nor does this case involve issues

---

[88] *Id.* at 2:8-22.

[89] *Id.* at 4:6-7:15

[90] *Id.* at 1:20-23, 4:12-16 n. 3.

[91] *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (citing *Wessell v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971)).

[92] *Schneider v. County of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (citing *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987)).

[93] *Id.* at 791.

[94] *Western Pacific Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1286-87 (9th Cir. 1984).

pertaining to the revocation of professional licenses by a city as was the case in *Golden State Transit Corp. v. City of Los Angeles*.[95]

In addition, the jury was instructed to award damages in:

> [T]he amount of money that will reasonably and fairly compensate Plaintiff for any injury you find was caused by a Defendant. You should consider the following: 1. The nature and extent of the injuries; 2. The physical, mental, and emotional pain and suffering experienced by Plaintiff; and 3. The reasonable value of necessary medical/dental care, treatment, and services received to the present time.[96]

Mork has not produced any evidence to suggest the jury did not already consider interest, or the related loss of time value of money, when it made its extremely large (and respectfully conscience shocking) damages award determination. As such, an award of pre-judgment interest would be an impermissible windfall to Mork as it must be presumed that the jury already considered the value of interest when determining what amount would "reasonably and fairly" compensate him "to the present time."

And this is especially true since Mork bears the burden and has not provided this Court with any PLRA case in which interest was awarded.[97] Mork points to *Forouzan v. BMW of N. Am., LLC*[98] which cites *A&M Produce Co. v. FMC Corp.*[99] as recommended factors for this Court to consider when deciding whether to exercise its discretion to award prejudgment interest. Both of thsoe cases, one state and one federal, analyze the award of prejudgment interest under Cal. Civ. Code § 3287 related to contract disputes. Neither California Civil Code nor contract disputes are relevant in the instant matter, which concerns a § 1983 matter under the PLRA in the state of Nevada.

Additionally, Mork points to *Murphy v. City of Elko*,[100] an employment claim, to support the assertion that years long delays would weigh heavily in favor of prejudgment interest. This statement is not applicable in the current matter as *Murphy* was referring

---

[95] 773 F. Supp. 204 (C.D. Cal. 1991).
[96] ECF No. 128 at 12:6-13 (Instruction No. 6).
[97] ECF No. 139 at 16:22-22:22.
[98] No. CV-1-73875-DMG-GJSX, 2019 WL 856395, at *3 (C.D. Cal. Jan. 11, 2019).
[99] 135 Cal.App.3d 473, 186 Cal. Rptr. 114, 129 (1982).
[100] 976 F. Supp. 1359, 1364 (D. Nev. 1997).

to *Herrington* and *Golden State*, two cases with 7-10-year delays.[101] Also, important to note that *Murphy* dealt with back wages and both *Herrington* and *Golden State*, involved income producing property withheld from the plaintiffs.[102] Here, no employment income or property was lost or withheld from Mork and the only result of awarding prejudgment interest for Defendants litigating a bona fide dispute would strongly be seen as a penalty for doing so.

Mork also believes that the equities favor him, as opposed to Defendants.[103] Defendants have a good-faith reason to pursue this case through appeal, not only the jury verdict.  Further, as the cases relied on by Mork note, prejudgment interest is generally provided to compensate plaintiffs who have economic damages as opposed to noneconomic damages. Mork made zero claims that he suffered economic damages as a result of Defendants' actions. Thus, the damages awarded were based on noneconomic factors. As noted above, the jury was instructed to award damages it believed would "reasonably and fairly compensate the plaintiff."[104]

Finally, while no prejudgment interest is warranted in this case, and assuming this Court awards confirms that any attorney fee award must be paid out of Mork's verdict award, given that the request made by Mork's counsel is less than 25% of the jury award, any amount of prejudgment interest should be based only on the remaining portion of the judgment after attorney fees are removed, as that portion of the judgment would have been unavailable to Mork for use and would not be a measure of compensation when determining any prejudgment interest award.

### D.    Mork's Request For Post-Judgment Interest Is Premature

Post-judgment interest "shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity yield, as published by the

---

[101] 976 F. Supp. 1359 (D. Nev. 1997); 790 F. Supp. 909 (N.D.Cal.,1991); 773 F.Supp. 204 (C.D.Cal.,1991).

[102] 976 F. Supp. 1359 (D. Nev. 1997); 790 F. Supp. 909 (N.D.Cal.,1991); 773 F.Supp. 204 (C.D.Cal.,1991).

[103] ECF No. 139 at 18:7-21:14.

[104] ECF No. 128 at 12:6-13 (Instruction No. 6).

Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). However, when a party seeks to alter or amend the judgment through the filing motions for judgment as a matter of law under Fed. R. Civ. P. 50(b), or a motion for a new trial under Fed. R. Civ. P. 59(e), the judgment is not final.[105] And a non-final judgment is unenforceable.[106] Defendants have filed motions under both Fed. R. Civ. P. 50(b) and 59(e), therefore the judgment is not final and the request for post-judgment interest is premature.

Also, as argued throughout this opposition, the equities are in Defendants' favor and no pre-judgment interest is warranted. The request for post-judgment interest should exclude any calculation of interest related to pre-judgment interest as well as any amount of attorney fees paid out of the award.

## V.    CONCLUSION

Plaintiff's Motion for Attorney Fees, Costs, and Interest should be calculated subject to the PLRA as the record is clear that the operative complaint was filed while Mork was still a prisoner. Here, this means that Mork is responsible for paying up to 25% of the judgment toward these fees, or a total of $1,086,937.50. As Mork's counsel admits, even when taking into account duplicate fees and lodestar enhancements, their fees are far short of this number. Accordingly, no attorney fee award is appropriate here, as the PLRA requires that they be paid fully from the jury award.

To the extent this Court finds that the PLRA somehow does not apply to this case, Defendants respectfully request this Court exercise its discretion and deny this motion in its entirety. Further, Defendants alternatively request that the request for attorney fees

///

///

///

///

---

[105] *Banister v. Davis,* 140 S. Ct. 1698, 1703 (2020).
[106] *Zucker v. Maxicare Health Plans, Inc.*, 14 F.3d 477, 481 (9th Cir. 1994).

be reduced for the reasons noted above, and that this Court deny Mork's request for prejudgment interest as inapplicable and post-judgment interest as premature.

DATED this 15th day of August, 2025.

AARON D. FORD
Attorney General

By:     /s/ Douglas R. Rands
DOUGLAS R. RANDS, Bar No. 3572
Senior Deputy Attorney General

/s/ Mark Hackmann
MARK HACKMANN, Bar No. 16704
Deputy Attorney General

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on this 15th day of August 2025, I electronically filed the foregoing, **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST ECF NO. 139,** via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by depositing a copy for mailing, addressed to the following:

Adam J. Breeden, Esq.
Breeden & Associates, PLLC
7432 W. Sahara Ave., Suite 101
Las Vegas, NV 89117
adam@breedenandassociates.com

Anna Holland Edwards, Esq.
Colo. Bar No. 35811
HOLLAND, HOLLAND EDWARDS &
GROSSMAN, LLC
1437 High Street
Denver, Colorado 80218
anna@hheglaw.com

*/s/ Connie L. Fondi*
An employee of the
Office of the Attorney General