ANNA HOLLAND EDWARDS
Colorado Bar No. 35811
RACHEL KENNEDY
Colorado Bar No. 54038
Holland, Holland Edwards, & Grossman, LLC
1437 N. High Street
Denver, CO 80218
Phone: (303) 860-1331
anna@hheglaw.com
*Attorneys for Plaintiff, pro hac vice*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NICOLAI MORK,<br><br>                Plaintiff,<br><br>vs.<br><br>PERRY RUSSELL, et al.,<br><br>                Defendants. | Case No. 3:21-cv-00077-MMD-CSD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST ECF 139** |

Plaintiff, by and through counsel, replies in support of his Motion (ECF 139), as follows:

## I. INTRODUCTION

Defendants ask that the Court deny the requested attorneys' fees based on application of the Prison Litigation Reform Act ("PLRA"), deny prejudgment interest as "inapplicable," and post judgment interest as "premature." ECF 153. The parties dispute whether the PLRA applies to this action at all. Caselaw is clear that where a formerly incarcerated Plaintiff files an amended complaint after their release, the PLRA doesn't apply, which is the functional issue here. ECF 8, the operative complaint in the case, should be treated as a new complaint – it was what was served on Defendants and what Defendants answered after Plaintiff was no longer incarcerated.

Defendants argue, without citation, that even if the Court concludes the PLRA does not apply, it should still "consider the PLRA limitations" in evaluating Plaintiff's requested attorneys' fees – functionally applying the PLRA anyway. Defendants proposed limitations are

at odds with the purposes of the fee shifting provisions of 42 U.S.C. § 1988, and their arguments regarding interest are also unduly restrictive and unsupported.

## II. THE PLRA DOES NOT APPLY

The PLRA applies only to those suits "brought" by "prisoners." *See, e.g.*, 28 U.S.C. § 1915(a)(2); 42 U.S.C. § 1997e(a). "[T]o fall within the definition of 'prisoner,' the individual in question must be currently detained as a result of accusation, conviction, or sentence for a criminal offense." *Page v. Torrey*, 201 F.3d 1136, 1139–40 (9th Cir. 2000). The parties agree that Mr. Mork attempted to file his initial complaint on February 9, 2021, but failed to tender the entire filing fee at that time. ECF 153 at p. 2. The parties further agree that Mr. Mork was paroled on March 24, 2021, ahead of the Court's refiling of the complaint on September 23, 2021. *Id.* at p. 5, ECF Nos. 7 & 8. Thus, the applicability of the PLRA turns on whether the initial complaint, or the complaint docketed at ECF 8, is the 'operative complaint' in this case.[1]

In his initial Motion for Attorneys' Fees, Costs, and Interest ("initial motion"), Mr. Mork explained that the entire filing fee was not paid on February 9, 2021 and discussed Magistrate Judge Denney's subsequent Orders to provide context.[2] Plaintiff acknowledges that the Ninth Circuit has held that an action is "brought," for PLRA purposes, when it is tendered to the district clerk. *See, e.g.*, *O'Neal v. Price*, 531 F.3d 1146, 1152 (9th Cir. 2008) ("a plaintiff has 'brought' an action for the purposes of § 1915(g) when he submits a complaint and request to proceed *in forma pauperis* to the court."); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir.

---

[1] Defendants quibble over whether Plaintiff's cases deal with the same subpart of the PLRA. ECF 153 at pp. 6-8. This is a distinction without a difference, as the cases broadly discuss the interplay between initial and operative complaints. They examine the exact question here: whether the PLRA applies when an initial complaint is superseded by a later complaint.

[2] Defendants argue that "if the lack of full payment of the filing fee had resulted in this case being dismissed as argued by Mork, the case would have been dismissed at that time." Plaintiff acknowledges that the case was not dismissed. If it had been, Mr. Mork would have had to start a new action, which would also not have been governed by the PLRA as he was then a non-prisoner. That is not what happened, but easily could have, and underscores the logical underpinnings of treating a subsequently filed complaint as controlling for PLRA purposes.

2006) (holding an action is "brought" for purposes of § 1997e(a) when the complaint is tendered to the district clerk and not when it is subsequently filed) (citing *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir.2004). Thus, Plaintiff *concedes* that the PLRA likely applied to this case from February 9, 2021-March 24, 2021.

The gravamen of Plaintiff's argument is that because the operative complaint, docketed at ECF 8, was not filed until after Mr. Mork was released, the PLRA does not apply to this case. The Ninth Circuit has emphasized that "case law interpreting the PLRA must be read and applied in the larger context of the pleading framework established by the Federal Rules of Civil Procedure. As a general rule. . . [an] amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014). In *Jackson v. Fong* it held that "a plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his operative complaint" is not subject to the PLRA's requirements. 870 F.3d 928, 937 (9th Cir. 2017). And in *Saddozai v. Davis* the Circuit reaffirmed that courts should not "look to the initiation of the suit," but rather to the plaintiff's status at the time of the *operative* complaint. 35 F.4th 705 (9th Cir. 2022). ECF 8 has been treated as the operative complaint throughout this litigation. Indeed, it is the only complaint ever served or answered. ECF 28; 32. The Court has also consistently treated ECF 8 as the operative complaint. *See, e.g.*, ECF 20 at ¶¶ 1, 5; ECF 25; ECF 77. This complaint was not filed until after Mr. Mork's release. ECF 8 (stamped September 23, 2021). Accordingly, the PLRA does not apply.

### III. PLAINTIFF SEEKS REASONABLE COSTS[3] AND FEES

Defendants next argue that the hourly rates should be reduced to PLRA rates even if the PLRA doesn't apply, yet do not provide any comprehensible rationale or legal authority in support of reducing market rates to PLRA rates in a non-PLRA case. ECF 153 at pp. 10-18. If

---

[3] Defendants do not seem to argue that the PLRA prevents the application of F.R.C.P. 54(d)(1) to this matter or address the reasonableness of the costs expended.

the Court determines that the PLRA applies to this case, Plaintiff **does not** seek pre-verdict attorneys' fees. Thus, the Court need not analyze whether fees should be so reduced. However, Defendants have not provided any rational basis for reducing the fee award if the PLRA does not apply. The attorneys' fees sought herein are reasonable and should be awarded.

### A. The hours sought are reasonable.

While purporting to assume the PLRA does not apply in Section IV(B) of their response, Defendants point repeatedly to the limitations the PLRA imposes on attorneys' fees, arguing that Plaintiff's counsels' hours are excessive, the fees calculation in this case "should be limited to time spent on trial," and that "time spent on post-verdict activities…are not reasonably related to proving an actual violation" of Mr. Mork's rights. ECF 153 at pp. 10-14. But even the PLRA does not limit fees calculations to only hours spent on trial. 42 U.S.C. § 1997e(d)(1)(A) (limiting fees to those "directly and reasonably incurred in proving an actual violation," not to trial time).

Additionally, the Ninth Circuit held in *Woods v. Carey*, that the PLRA fee cap does not apply to fees incurred in defending a judgment in favor of a prisoner on appeal. 722 F.3d 1177, 1184 (9th Cir. 2013). As in *Woods*, Plaintiff's counsel have incurred significant additional post-judgment fees defending the verdict. Even if the Court concludes that the PLRA does apply, post-verdict attorney fees are continuing to accrue, and should be awarded as supplemented upon Court ruling to account for post-verdict and appellate work. Defendants' wholly unsupported argument that PLRA limitations should be applied in a non-PLRA case should be rejected as Plaintiff's sought hours are reasonable under both lodestar calculations and the *Kerr* factors.

***Mr. Breeden and Ms. Grossman's hours are reasonably included:*** Mr. Breeden was a critical member of Plaintiff's team. Indeed, Colorado counsel *could not have represented* Mr. Mork without Mr. Breeden's participation as local counsel. Although Defendants acknowledge that Mr. Breeden played a different role than the rest of the legal team, they also state without

4

much explanation that his work was largely duplicative. Mr. Breeden played a unique and necessary role in this case, ensuring that out-of-state counsel's work complied with local practice, and contributing local insight. *See* ECF Nos. 139 at p. 10; 139-6. Defendants argue his hours should not be included because "it was Mork's and his counsel's decisions to have outside counsel try this case as opposed to Attorney Breeden." ECF 153 at p. 14. Even with counsels' help, Mr. Mork could not find a local attorney willing and able to take on his case. ECF Nos. 139-4 at ¶ 22; 139-7 at ¶ 12. Mr. Breeden only joined the litigation after Colorado counsel agreed to take on the matter, and at their request to serve as local counsel. Mr. Breeden's joining the case allowed Mr. Mork to be represented at all.

Ms. Grossman was also critical to the case team. Defendants paradoxically accept that a law clerk can meaningfully participate in trial remotely but contest that Ms. Grossman can do so from the gallery. ECF 153 at pp.13-14. Plaintiff is not seeking to recover fees for passive "supervisory" attendance. Rather, Ms. Grossman is co-counsel and actively worked on the case. She contributed to trial strategy and witness exams in Court, trial preparation work, and much work outside of court. ECF 139 at p. 10; ECF 139-10 at pp. 17-19; **Ex. 1**. She also wrote off significant time she worked on the case in the months prior to trial and discounted her rate in recognition that she was not trial counsel. ECF 139 at p. 10; ECF 139-10 at pp. 1-2, 4-17.

***Time and Labor required:*** Defendants fault Plaintiff for re-opening discovery and retaining an expert. ECF 153 at p. 15. Counsel takes this position despite recently arguing to the Ninth Circuit that a Plaintiff is *required* to offer an expert opinion "that his dental care was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to Plaintiff's health." *Pattison v. Benson*, No. 23-15870, ECF 20 at p. 32. The Attorney General's Office wants it both ways – when an inmate is *pro se*, and likely without the resources to hire an expert, they argue expert testimony in necessary to prove deliberate

indifference. But when an inmate is represented, and has the resources to retain an expert, they argue experts are an unnecessary and wasteful expense. ECF 153 at p. 15.

The reality is that Defendants chose to take this case to trial rather than settle it. While Mr. Mork was *pro se*, they made a tactical choice to largely ignore discovery requests, provide obfuscatory answers, and withhold records. Thus, it was apparent to undersigned, upon review of the file, that limited reopening of discovery was necessary. Indeed, Defendants had not produced clearly relevant policies and procedures (such as Medical Directive 408 which contains deadlines for provision of dental care), or even the name of the dentist who eventually saw Mr. Mork.

Defendants "cannot choose to 'litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response.' The time required to litigate increases when the defendant bitterly contests the case, forcing the plaintiffs to win their victory from 'rock to rock and from tree to tree.'" *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (*citing Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992)). The hours devoted are reasonable, have already been reduced and there is no rational basis for further reduction.

**B.   The rates sought are reasonable.**

Defendants erroneously frame Plaintiff's request for the local market rate as a request for lodestar enhancement. *See* ECF 153 at pp. 11, 14. If anything, it reflects a reduced lodestar, as out-of-state counsel reduced their typical hourly rates to better match the local market. ECF 139-2 at ¶¶ 12, 16-19; 139-3 at ¶¶ 8-11; 139-4 at ¶¶ 20-24, 28; ECF 139-5 at ¶¶ 20-21, 25; **Ex. 1**. As the Ninth Circuit reasoned in *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020):

> We reject Defendants' argument that the district court erred in applying Bay Area and D.C. paralegal market rates and instead of the market rate in Phoenix. "[R]ates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Plaintiffs have submitted uncontroverted evidence regarding the unavailability of local counsel to handle complicated and low-paying prison cases such as this one. There is thus a factual and legal basis for the district court to award fees based on

rates outside Phoenix.

Defendants do not argue the rates are atypical, but instead that Plaintiff's counsel should not be allowed more than 150% of the CJA rate even if the PLRA does not apply. *Id.* at pp. 10-12. Again, this position is irrational and unsupported. The rates sought are in line with those "prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation," and thus, reasonable. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The *Kerr* factors additionally support the reasonableness of the rates sought.

***Novelty and difficulty of the questions involved:*** As detailed in Plaintiff's initial motion, medical deliberate indifferent claims are both legally and factually complex. The question is not whether the lawyers seeking fees have expertise in difficult claims and questions, but whether the questions themselves are novel and difficult. The fact that counsel have expertise in these types of difficult claims justifies the rates sought. *See* ECF 153 at pp. 15-16.

***Skill requisite to perform the legal service properly:*** To undercut the degree of skill required to handle this case, Defendants emphasize that Mr. Mork litigated *pro se* through summary judgment. Mr. Mork did a wonderful job as a *pro se* litigant. The fact he did so well on his own highlights his dedication and intelligence – it does not undercut counsels' skill in trying the case. Once Mr. Mork retained counsel, significant additional skilled work was required, including taking depositions, conferring and preparing pre-trial filings, developing trial strategy, determining order of proof, selecting a jury and, of course conducting a three-day trial.

***Preclusion of employment***: Defendants curiously argue that there is "no evidence" this case took time out of Plaintiff's counsels' normal practice because much of HHEG's caseload is made up of prisoner civil rights cases. ECF No 153 at p. 16. This factor invites consideration of "the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714,

718 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989). It makes no difference whether counsel would have devoted this time to working on similar claims. All that matters is that counsel were precluded from working on other cases.

***Customary fee:*** Defendants do not contest that the rates sought are customary. ECF 153 at p. 17. Rather, they again argue that only a PLRA rate should be awarded. Plaintiff does not seek fees for pre-verdict work if the PLRA is found to apply. The rates sought are within the customary range, and there is no basis for reduction. *See*, ECF Nos. 139-1 at ¶¶ 11, 13-14; 139-2 at ¶¶ 9-12, 18-19; 139-3 at ¶ 8, 10; 139-4 at ¶¶ 20-21; 139-5 at ¶ 25; 139-6 at ¶¶ 10, 11(f), 13-14.

***Whether the fee is fixed or contingent***: As was sworn to in multiple declarations, and represented by counsel in the initial motion, counsel entered into a reduced contingency agreement to recognize Mr. Mork's work as a *pro se* litigant. ECF Nos. 139 at p. 16; 139-2 at ¶¶ 28-29; 139-3 at ¶¶ 7-9. Defendants do not provide any basis for questioning the veracity of these sworn statements. Instead, they pivot to an uncited quote that must be from another case as undersigned counsel did not state that the "agreement provides the base and not the ceiling for Plaintiff's attorney fee award." *Compare generally* ECF 139 to ECF 153 at p. 17. Nonetheless, the Supreme Court has long held that "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with [42 U.S.C. § 1988] and its policy and purpose." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

***The undesirability of the case:*** As in *Parsons*, local counsel was unavailable. *See* ECF Nos. 139-2 ¶ 28; 139-3 ¶ 10; 139-4 ¶¶ 22-23; 139-6 ¶ 11(j); 139-7 ¶12. The inability to find local counsel demonstrates the undesirability of this case (and others like it). *See* ECF 139-4 ¶¶ 22-23.

***Awards in similar cases:*** Defendants attempt to distinguish *Miller v. Aranas* by highlighting that the case involved not only Eighth Amendment claims, but others; that the Court had already found the PLRA did not apply; and that a settlement excluding attorneys' fees had

been reached. ECF 153 at pp. 17-18. However, these differences are immaterial, where the Court was assessing the reasonableness of an attorneys' fees request in a Nevada prisoner's § 1983 non-PLRA medical case. Plaintiff is seeking comparable hourly rates in a non-PLRA case that involved similar claims and similarly experienced counsel. Given these similarities, this Court's Order approving attorneys' fees in *Miller* supports the reasonableness of the rates requested here.

## IV. PLAINTIFF IS ENTITLED TO PRE-JUDGMENT INTEREST

The parties agree, and the law is clear, that the decision to award pre-judgment interest is within the sound discretion of the trial court. ECF 139, p. 16:24-27; ECF 153, p. 18:13-15. Defendants focus narrowly on the type of claim, the type of damages, the type of plaintiff, and the amount of the verdict, none of which are the correct considerations.

**A.    Where the underlying statute is silent as to prejudgment interest, but aimed at compensation, prejudgment interest is appropriate regardless of the type of loss.**

Defendants narrowly cabin case law to the exact type of losses, arguing that Plaintiff's case is not a takings clause case like *Schneider v. County of San Diego,* a forfeiture case like *Western Pacific Fisheries, Inc., v. SS President Grant,* or a license revocation like *Golden State Transit Corp. v. City of Los Angeles.* ECF 153, p. 18-19. The specific wrong is not the issue, as *Golden State* itself concludes. There, the Court ruled that where the purpose of the statute giving rise to the claim is to compensate a victim, then the Court may consider pre-judgment interest because it is an element of compensation. 773 F. Supp. 204, 210-12 (C.D. Cal. 1991) ("Federal courts clearly have the latitude to award prejudgment interest in cases arising under the patent, copyright, antitrust laws, and tax laws, where claims are also not liquidated. **There is no reason to distinguish those cases from cases under § 1983**, such as this one." (Emphasis added).

**B.    Prejudgment interest may be properly awarded on non-economic damages.**

That the significant majority of Mr. Mork's damages are for pain has nothing to do with whether pre-judgment interest is allowed. Defendants argue *Murphy v. Elko* is irrelevant because

9

it considered *longer* delays in concluding long delays "weigh heavily" in favor of prejudgment interest. ECF 153, p. 19-20. That other cases have experienced longer delays does not mean that four years is not a long time, especially where such delays caused by dilatory tactics.

More importantly however, *Murphy* specifically concluded that "prejudgment interest is available in Section 1983 cases." 976 F. Supp. 1359, 1363 (D. Nev. 1997). *Murphy* does not support the claim that prejudgment interest should only be considered on economic loss like "back wages." Instead, it specifically stands (and has been cited by the Ninth Circuit) for the opposite proposition: that "non-economic damages awarded for a plaintiff's pain and suffering are 'just as much an 'actual loss' (for which prejudgment interest is in order)' as purely economic damages." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (citing *Murphy* at 1364). As the Ninth Circuit simply put, the argument that prejudgment interest is not appropriate when applied to an award of non-economic damages "**is incorrect**." *Id.*

    **C.**    **Plaintiff's entire award is properly considered for prejudgment interest.**

Defendants also argue, without citation, that any portion of Mr. Mork's compensatory damages used to pay lawyers should be excluded from any prejudgment interest.[4] The entire jury award of $4,347,750 was compensatory and should be considered for prejudgment interest. The jury was instructed on compensatory damages, with no instruction on interest, and there is no reason to believe the jury took interest into account. *See* ECF. No. 128, p. 12. If the Court concludes that the PLRA applies, Plaintiff does not seek pre-verdict attorney's fees. Whether Mr. Mork uses some of his verdict to pay attorneys has nothing to do with whether it was awarded to

---

[4] There is precedent for awarding pre-judgment interest on attorneys' fees that constitute an element of damages, which attorneys' fees paid out of damages would be. *See Est. of Wildhaber v. Life Care Centers of Am.,* No. 2:10-CV-00015-MMD, 2012 WL 5287980, at *2 (D. Nev. Oct. 23, 2012)("Defendant argues that the arbitration panel manifestly disregarded the law when they awarded prejudgment interest on attorneys' fees as those are not prejudgment damages, but rather, post-judgment fees. Defendant recognizes that courts may impose prejudgment interest on attorneys' fees "when attorney fees are awarded as an element of damages.").

compensate him for his losses, which is likely why this argument is offered without citation. If the Court awards attorneys' fees, Plaintiff does not seek pre-judgment interest on those fees.

### D. The equities support an award of prejudgment interest.

Finally, Defendants argue that pre-judgment interest would not do anything to further the goal of addressing civil rights violations, and that the equities weigh against pre-judgment interest because Nevada has an interest in litigating cases. Prisoners' civil rights cases often languish and are often lost through attrition. Mr. Mork was ignored for years, requiring multiple orders to obtain initial disclosures. ECF Nos. 38, 41 and 44. Had the defense of this case involved collecting pictures from Defendant Naughton in any timely way, Mr. Mork would have had more direct evidence of his claims and likely a more timely resolution. Defendants' litigation approach cost Mr. Mork years without use of his compensatory damages. Requiring Defendants to pay interest on the money they prevented Mr. Mork from accessing, through their own litigation conduct, would "further the goal of remedying violations of Mork's civil rights" because it would allow him full compensation for the violation of his rights. ECF 153, p. 18.

## V. PLAINTIFF IS ENTITLED TO POST-JUDGMENT INTEREST

Defendants argue, again without citation to relevant authority,[5] that Plaintiff's request for post-judgment interest is premature because Defendants filed motions pursuant to Rule 50 and 59. ECF 153 at pp. 20-21. However, it is well-established that an award of post-judgment interest on a District Court judgment is mandatory, that interest accrues from the date the judgment is entered, and that accrual is not paused by the filing of post-trial motions. 28 U.S.C. § 1961; *see Air Separation Inc. v. Underwriters at Lloyd's of London,* 45 F.3d 288, 289–90 (9th Cir.1995) (holding that post judgment interest is mandatory, and noting that the "[f]ailure to award post judgment interest would create an incentive for defendants to exploit the time value of money by

---

[5] Defendants cite *Banister v. Davis*, 590 U.S. 504 (2020) and *Zucker v. Maxicare Health Plans, Inc.*, 14 F.3d 477 (9th Cir. 1994), neither of which discuss post-judgment interest accrual at all.

frivolously appealing or otherwise delaying payment."); *Barnard*, 721 F.3d at 1078 (remanding to the district court with instructions to award the plaintiff the appropriate post judgment interest, which it previously denied); *Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 674 (9th Cir. 1973); *Am. Tel. & Tel. Co. v. United Computer Sys., Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996).[6]

There is no exception for a pending Rule 50 or Rule 59 motion. The clock begins running when the judgment is entered, even if it is subject to change based on a post-trial motion or an appeal. Holding otherwise would allow a debtor to profit by delaying payment, which is directly contrary to the purpose of imposing mandatory post-judgment interest. Additionally, interest should be awarded on the entire judgment, including any pre-judgment interest and attorneys' fees. *Air Separation, Inc.,* 45 F.3d at 291; *Perkins*, 487 F.2d at 675. Accordingly, Plaintiff is entitled to post-judgment interest on the entire verdict, running from June 20, 2025, as well as on any Ordered pre-judgment interest and attorneys' fees. *Perkins*, 487 F.2d at 675.

Wherefore, Plaintiff requests his motion be granted in its entirety.

DATED this 2nd day of September, 2025.

By: */s/ Rachel Kennedy*
RACHEL KENNEDY, Colorado Bar No. 54038
Holland, Holland Edwards, & Grossman, LLC
1437 N. High Street
Denver, CO 80218
rachel@hheglaw.com
*Attorney for Plaintiff, pro hac vice*

---

[6] *See also Marshall v. Perez-Arzuaga*, 866 F.2d 521, 523 (1st Cir. 1989) ("motions for judgment N.O.V. or for a new trial do not delay the entry of judgment for purposes of accruing post-judgment interest."); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 845-46 (7th Cir. 1978) (holding post-trial motions do not delay the entry of judgment for purposes of accruing post-judgment interest, noting, "[i]n fact, Rules 50(b) and 59(b), (e) define the timely filing of such motions as being not later than ten days after 'entry of the judgment,' the very act Sealy would have us hold cannot properly occur if post-trial motions are filed."); *Poleto v. Consolidated Rail Corp.,* 826 F.2d 1270, 1281 (3rd Cir.1987) ("When post-trial matters require time for proper resolution ... the better practice is not to delay entry of the judgment (thereby prejudicing the successful plaintiff's claim to post-judgment interest), but to enter the judgment and entertain a motion to stay its execution....").

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September 2025, the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST ECF 139** via this Court's electronic filing system. Parties that are registered with the Court's electronic filing system will be served electronically.

*/s/ Brooke Thiele-LaForest*
Brooke Thiele-LaForest
Paralegal